# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SPENCER, Minors.

UNPUBLISHED
December 27, 2018

Nos. 343900; 343902
Wayne Circuit Court
Family Division
LC No. 16-522486-NA

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent mother and respondent father appeal as of right the trial court's order terminating their parental rights to their three minor children pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g)[2] (failure to provide care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to parent). We affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

On February 12, 2016, respondent father called emergency medical services because respondent mother overdosed on heroin in the home while the children were present. Upon receiving a referral, Child Protective Services (CPS) investigated the home the same day and found filthy surfaces, dirty dishes, old food caked onto and covering the stovetop, excessive clutter, and two litter boxes overflowing with feces. On February 14, 2016, CPS personnel returned to the home but were denied entrance into the residence; they observed a three-foot high

---

[1] *In re Spencer Minors*, unpublished order of the Court of Appeals, entered June 6, 2018 (Docket Nos. 343900 and 343902).

[2] MCL 712A.19b(3)(g) was amended, effective June 12, 2018. See 2018 PA 58. Under the current version of the statute, statutory grounds exist to terminate a parent's parental rights if the court finds by clear and convincing evidence that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." As the order terminating parental rights was entered on April 5, 2018, before the amendment took effect, the prior language of the statute is applicable.

-1-

pile of dirty laundry behind the front door and detected a pervasive, indescribably foul odor. Also on February 14, 2016, both respondents tested positive for Suboxone. On February 18, 2016, a CPS specialist observed the home and saw animal feces, half-eaten pizza scattered around the kitchen, and cigarette butts on the floor throughout the house. On February 19, 2016, respondent father tested positive for traces of cocaine, and on February 26, 2016, he tested positive for tetrahydrocannabinol (THC), cocaine, heroin, and fentanyl; his level of heroin was reported as very high, which indicated chronic use over time. On February 23, 2016, respondent mother tested positive for cocaine and heroin, and on February 26, 2016, she tested positive for cocaine and Suboxone. Respondent mother reported that she had been addicted to opiates for a year or more, that she regularly used cocaine and heroin, and that she had undergone an outpatient program in 2014 to treat her addition to cocaine. Respondent father reported that he used cocaine regularly.

In April 2016, the trial court authorized a petition for removal of respondents' three minor children, CJS, PRS, and AES. According to petitioner, respondents were substance abusers, and the children were living in an unfit home. The children were placed together in foster care. At an adjudicatory hearing held on April 15, 2016, respondent mother admitted to using cocaine and heroin for approximately one year and to using illegal drugs in the presence of her children. She said that her drug use did not impair her ability to parent her children, but admitted that she is unable to be an attentive parent and to manage the house when she is under the influence of heroin or cocaine, and conceded that the house had been in an unsuitable state. Respondent father admitted to using cocaine, heroin, marijuana, and prescription drugs for which he did not have a prescription, and that his drug use sometimes impaired his ability to parent his children. He stated that he believed the house was in suitable condition when CPS removed the children from the home, but admitted the presence in the home of animal feces, piles of laundry, dirty dishes, and old food. The court accepted respondents' admissions, found a statutory basis for jurisdiction, and made the children temporary wards of the court under the supervision of the Department of Health and Human Services (DHHS).

At a May 26, 2016 hearing, a foster-care worker for Fostering Futures presented a treatment plan to the court, and the court subsequently entered an order requiring respondents to comply with the plan. The plan called for respondents to complete substance abuse treatment, individual therapy, and weekly drug screenings, obtain suitable housing and a legal source of income, and attend parenting classes and parenting-time visits.

Initially, respondents appeared to comply with and generally benefit from their treatment plan. At an October 14, 2016 dispositional review hearing, a foster-care worker from Fostering Futures reported that respondents had completed their substance abuse assessments and were complying with the substance abuse counseling services, their parenting time, and their parenting classes. In addition, respondent mother had shown the foster-care worker a prescription for Suboxone. However, respondent mother had missed three of seven scheduled drug screens and respondent father had missed four of eight, allegedly because the time for the drug screens conflicted with other services. In addition, respondents presented no documentation of having attended any Narcotics Anonymous (NA) meetings.

At an April 2017 dispositional review hearing, a foster-care worker reported that respondents had a home, were participating in services, each had a source of income, and

parenting time was going well, but there were still problems with substance abuse. Respondents were not drug screening consistently, had provided no evidence of attendance at NA meetings, and respondent father had tested positive for cocaine during the last reporting period. At a July 2017 dispositional review hearing, a foster-care worker reported that both respondents had completed parenting classes and were in inpatient treatment programs. She opined, however, that respondent father had not benefitted from parenting classes because he had missed at least five parenting-time visits since the last court hearing and, at one visit, had scared all of the children when he became violently angry with the oldest child. The foster-care worker reported that substance abuse continued to be the primary barrier to reunification, but also noted respondent father's issues with anger management. In addition, respondents no longer had a home, and although respondent father reported that he was working, he had provided no substantiating documentation.

At an October 2017 dispositional review hearing, the foster-care worker reported that respondent mother had completed a 90-day inpatient substance abuse treatment program and planned to stay with relatives temporarily, but she had not arranged for outpatient services. Respondent father had not visited with the children or submitted to a drug screen since June 2017. In addition, he had started numerous inpatient treatment programs without completing any of them. He had not provided proof of income and still needed anger management treatment, individual therapy, and housing. At the court's instruction, DHHS filed a supplemental petition seeking to terminate respondents' parental rights.

A two-day hearing on the supplemental petition began on April 2, 2018. Lia Bloxam, respondents' foster-care worker from April 2017 through December 2017, described respondents' treatment plan and testified that respondent mother had completed parenting classes. However, she opined that respondent mother had not benefitted from parenting classes because she continued to test positive for illegal drug use and still required instruction during parenting time to prevent the children from eating to the point of making themselves sick and to redirect them when they were becoming too aggressive or were not interacting with one another. Bloxam testified that although respondents had suitable housing in April 2017, they lost it in June 2017 following a break-in that resulted in the theft of large items such as their beds, washer and dryer, and refrigerator. Respondents did not file a police report. After she left inpatient treatment in October 2017, respondent mother planned eventually to move into a trailer where her cousin lived, but that plan fell through by December 2017. Erica McClure, who succeeded Bloxam as respondents' foster-care worker, testified that when she took the case over, respondents were living with a friend, and in February 2018, they started renting a room from respondent mother's high school friend. McClure said she provided referrals for housing, but at the time of the termination hearing, respondents were still in the rented room.

Bloxam also testified that respondent mother never successfully completed her substance abuse treatment. In June 2016, respondent mother received a referral to home-based substance abuse counseling therapy. Respondent mother did not attend therapy consistently, but the program never officially terminated. In addition, respondent mother did not submit to drug screens consistently, missing 17 of 51 screens during Bloxam's tenure, and testing positive on several of the screens that she did take. Respondent mother received a referral to and completed an inpatient treatment program, but subsequently tested positive for cocaine, most recently, less than two months before the termination hearing. Respondent mother attended Alcoholics

Anonymous (AA) meetings while enrolled in inpatient treatment, but provided no documentation showing that she attended NA or AA meetings outside of the inpatient program.

With respect to respondent father, Bloxam opined that he did not benefit from parenting classes, as is evident from his occasional violent outbursts at parenting time and the fact that he did not attend any parenting-time visits from July 2017 through October 2017. To the extent that respondent father was searching for or attending inpatient treatment programs during this time, Bloxam noted that no documentary evidence indicated that he attended any inpatient treatment program for more than one week. In total, respondent father missed a little more than a quarter of his opportunities for parenting time. Moreover, respondent father did not successfully complete his substance abuse treatment. He failed to attend 40 of 65 scheduled drug screens and tested positive on several of those that he did attend, most recently approximately three weeks prior to the termination hearing. At the end of the first day of the termination hearing, the trial court ordered both respondents to undergo drug screening: both tested positive for cocaine.

The trial court heard testimony from Jason Flatt, a friend of respondents who lived with respondents three or four years prior to the children's removal. Flatt testified that respondent mother was great with the children and that he never saw respondent father yell at the children, although he did raise his voice at them. Flatt opined that the children enjoyed strong parent-child bonds with both respondents. The trial court also heard testimony from Nick Russo, respondents' substance abuse counselor at the time of the termination hearing. Russo testified that respondent mother's attendance at weekly counseling sessions was consistent and that she had produced clean drug screens, indicating that she was making progress. Russo, who had been working with respondents for three or four months, opined that respondents could resolve their barriers to reunification in an additional three to six months.

As indicated, the trial court found clear and convincing evidence of grounds to terminate respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g) and (j). With regard to the best interest factors, the trial court noted that there was a bond between respondents and the children, and it was a factor to be considered, but that it was not enough to prevent termination of respondents' parental rights. The court determined that the children had been in foster care too long without respondents having progressed with respect to housing or drug use. Accordingly, the court found that the evidence preponderated in favor of finding termination of respondents' parental rights to be in the children's best interests. The court entered a corresponding order, and this appeal followed.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondents contend that the trial court erred in finding that clear and convincing evidence established statutory grounds to terminate their parental rights. We disagree. We review the trial court's findings regarding statutory grounds for clear error. *Id*. See also MCR 3.977(K). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999). Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); see also MCR 2.613(C).

Again, the trial court found that petitioner had established grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j). Under MCL 712A.19b(3)(c)(*i*), the court may terminate a parent's rights if 182 or more days have passed since issuance of an initial dispositional order and the court finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

The primary barriers to reunification, and the conditions leading to respondents' adjudication, were respondents' substance abuse and lack of suitable housing. Nearly two years after adjudication, these continued to be the primary barriers to reunification. Respondent mother tested positive for cocaine multiple times during the course of this proceeding. She completed a 90-day inpatient treatment program in October 2017, but continued to test positive for cocaine, including three times in December 2017, once in February 2018, and even on the first day of the April 2018 termination hearing. Respondent father's substance abuse likewise continued. He missed 40 of 65 scheduled drug screens, and of the screenings he completed, several were positive for cocaine. He failed to complete his substance-abuse therapy or to present evidence of having attended NA meetings, and he failed to complete an inpatient treatment program. He tested positive for cocaine less than a month before the termination hearing as well as on the first day of the hearing. In light of the foregoing, we cannot say that the trial court clearly erred by finding that respondents' substance abuse continued to be a barrier to reunification more than 182 days after adjudication.

Respondents' lack of suitable housing for their children was another barrier to reunification. Over the two-year course of this proceeding, none of respondents' various living situations proved stable or permanent. It appears from the record that the only time DHHS was able to verify that respondents had a suitable home for their children was from March 2017 to June 2017. Respondents did not have suitable housing at any time after June 2017. At the time of the April 2018 termination hearing, respondents were renting a bedroom in the home of one of respondent mother's friends, an accommodation that respondents conceded was unsuitable for three children. Given the record before us, we cannot say that the trial court's finding that respondents had not rectified their lack of suitable housing was clearly erroneous.

Respondent mother argues on appeal that the trial court erred by finding clear and convincing evidence to terminate her parental rights pursuant to MCL 712A.19b(3)(c)(*i*) because therapist Nick Russo testified that she could become drug-free within three to six months. However, the trial court specifically addressed Russo's testimony, determining it to be overly optimistic and not supported by the facts and, therefore, not entirely credible. We give due regard to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *In re Miller*, 433 Mich at 337; MCR 2.613(C).

Respondent father argues on appeal that DHHS did not make reasonable efforts to provide appropriate assistance in meeting his treatment needs. "[I]t is true that, with limited exceptions, 'reasonable efforts to reunify the child and family must be made in all cases[.]' " *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), quoting MCL 712A.19a(2). However, "[t]he time for asserting the need for accommodation in services is when the court adopts a service plan[.]" *In re Frey*, 297 Mich App at 247 (citation and quotation marks omitted). Respondent father did not assert the need for any accommodations when the plan was adopted.

On appeal, respondent father asserts that Bloxam's failure to return his phone call when he called and said he could be reached at his sister's number constituted a lack of reasonable efforts on the part of the agency. Bloxam testified that she did not return his call on that instance because she felt he would contact her when he wanted to report his services, and he already had the number he needed to enroll in inpatient treatment. The evidence shows that respondent father was provided with referrals for therapy, with a psychological evaluation, with transportation to his parenting time visits, and, subsequently, with gas cards when requested. Concerning the inpatient treatment program, the procedure was for respondent father to call the number provided for him in order to enroll in a program. Additionally, when respondents indicated that their drug screens were conflicting with their other services, their drug screening schedule was modified to allow them to screen the day before or the day after their scheduled day. These facts do not support the conclusion that petitioner failed to make reasonable efforts to reunify respondent father with his children.

After two years and multiple services, respondents have not resolved the issues of substance abuse and lack of suitable housing that constitute barriers to reunification with their children. Moreover, respondent's past performance provides no indication that they likely will be able to rectify these conditions within a reasonable time considering the children's ages. Therefore, we conclude that the trial court did not err when it determined that clear and convincing evidence established grounds to terminate respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*). Because only a single statutory ground needs to be established to support termination of parental rights, MCL 712A.19b(3), we find it unnecessary to address respondents' claims of error regarding MCL 712A.19b(3)(g) and (j). *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016).

### B. BEST-INTEREST DETERMINATION

Respondents argue that the trial court erred in finding that it was in the best interests of the children to terminate their respective parental rights. Again, we disagree.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's ruling that termination is in the children's best interest. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (citation and quotation marks omitted).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the

children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court found that respondents had a parent-child bond with their children, but the bond alone was not enough to outweigh their complete lack of progress in attempting to overcome their substance abuse and procure suitable housing. Regarding a parental bond and ability to parent the children, there is clear evidence that respondent mother was bonded with her children; however, her continued drug use inevitably prevented her from providing the parental care necessary for the children. Respondent mother testified that when she was under the influence of drugs, she struggled to maintain the household. Additionally, a foster care worker testified that respondent mother was more passive in disciplining the children when respondent father was present, and although respondent mother indicated that she would plan separately from respondent father, all evidence suggested that respondents would continue to plan together. Respondent father appeared to have a bond with the children, but he failed to complete his treatment plan, and he consistently tested positive for cocaine. Moreover, although respondent father completed his parenting classes, he missed 23 of the 72 parenting time visits, and on one occasion, he exhibited particularly aggressive behavior toward CJS, causing all of the children to be afraid of respondent father. Additionally, the children were in need of permanency, stability and finality. Bloxam and McClure acknowledged the children's bond with respondents, but stated that it was in the children's best interests to terminate respondents' parental rights because the children had waited two years, but the parents were no closer to reunification. Respondents' conduct in continuing to use drugs and failing to provide suitable housing for the children leaves the children without the permanency, stability, and finality that they need. *Olive/Metts*, 297 Mich App at 42. The children required the stability and permanency that adoption could bring, and the foster family was willing to consider adopting them. Thus, it was not clear error for the trial court to find that it was in the children's best interest to terminate respondents' parental rights.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering