*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. N. HODGE, Minor.

UNPUBLISHED
November 12, 2020

Nos. 352336; 352338
Wayne Circuit Court
Family Division
LC No. 17-001083-NA

Before: O'BRIEN, P.J., and BECKERING and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent mother and respondent father appeal as of right the order terminating their parental rights to the minor child, DH, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to parent). We affirm.

## I. BACKGROUND

On June 26, 2017, a petition was filed requesting that the trial court take jurisdiction of DH and terminate the parental rights of respondent mother and DH's unknown father[2] because of improper supervision, physical neglect, and drug abuse. DH was born on March 14, 2017. The petition stated that at birth, DH tested positive for opiates and experienced withdrawal symptoms. The petition also stated that respondent mother tested positive for opiates and benzodiazepines at the time of DH's birth. The petition stated that on June 12, 2017, Children's Protective Services (CPS) received a complaint alleging that DH fell on the ground after rolling out of the bed he was sleeping in with respondent mother and was found sleeping face down with bruising on his forehead. The complaint also alleged that respondent mother was addicted to heroin and was using the drug while caring for DH. The petition stated that respondent mother completed a drug test on

---

[1] On January 29, 2020, this Court entered an order consolidating these two appeals. *In re Hodge*, unpublished order of the Court of Appeals, entered January 29, 2020 (Docket Nos. 352336 and 352338).

[2] At the time the petition was filed, respondent father was the putative father because he had not yet established paternity of DH.

the date the complaint was received and tested positive for heroin and morphine. The petition also stated that CPS received a photograph allegedly showing respondent mother and respondent father intoxicated while DH slept in a bed with a blanket covering him. The petition stated that respondent mother has a criminal history including retail fraud and two convictions for delivery/manufacture of cocaine. As a result of the petition, DH was removed from respondent mother's care and placed with his maternal grandmother.

On November 29, 2017, respondent mother entered a plea to jurisdiction at a pretrial hearing. Respondent mother admitted that DH tested positive for opiates at the time of his birth and experienced withdrawal symptoms. She admitted that she tested positive for opiates and benzodiazepines at the time of DH's birth. Respondent mother further admitted that she tested positive for heroin and morphine on June 12, 2017. She also admitted that if she were to submit to a drug screen at that time she would test positive for opiates. At a dispositional hearing on January 10, 2018, the trial court ordered respondent mother to participate in infant mental health (IMH) services, random drug screens, narcotics anonymous and alcoholics anonymous, and a psychological evaluation. The trial court further ordered her to maintain legal income, housing, and contact with her case worker. In addition, she was ordered to have supervised visits with DH.

On January 17, 2018, DH was removed from his maternal grandmother's home due to a history with CPS, allegations that she left DH with unapproved caregivers without background checks, and that she endangered DH by permitting respondent mother to visit him while "high on drugs." The Foster Care Review Board heard the allegations against the maternal grandmother and supported the removal.

Respondent father established paternity after signing an affidavit of parentage, and on February 27, 2018, a supplemental petition was filed regarding him. The petition alleged that respondent father lived with respondent mother, who was not in compliance with her treatment plan. The petition stated that respondent father had not provided verification of employment and was unwilling or unable to protect DH from respondent mother. The petition further stated that respondent father has a criminal history including a 1997 conviction for felony assault with a dangerous weapon, a "2006 drug crime," a 2013 breaking and entering charge, and five cases relating to domestic violence. The petition alleged that respondent father's criminal history created a risk of harm for DH. On May 17, 2018 the trial court held a bench trial on the supplemental petition and ultimately took jurisdiction of DH in regard to respondent father. At a dispositional hearing on June 18, 2018, the trial court ordered respondent father to participate in IMH services, maintain a legal source of income and suitable housing, participate in parenting visits, and stay in contact with the foster care worker. In addition, respondent father was later referred for a psychological evaluation and individual therapy in December 2018.

On April 19, 2019, a supplemental petition was filed requesting that the trial court terminate respondents' parental rights. The petition alleged that respondent mother failed to complete parenting classes, the parent-partner program, substance abuse therapy, IMH services, and a psychological evaluation. The petition also stated that respondent mother failed to submit to random drug screens, missing 64 out of 64 scheduled screens. The petition stated that respondent mother also missed 10 parenting visits, was often late to visits, and appeared to be under the influence at a visit. In addition, the petition noted that on two occasions respondent mother's home was deemed not suitable for DH and she also canceled three attempts for a home

evaluation. In regards to respondent father, the petition alleged that he failed to participate in a psychological evaluation, individual therapy, or IMH services. The petition stated that although respondent father maintained that he was employed, he did not provide any verification. The petition further alleged that respondent father had missed 16 parenting visits, arrived late to numerous visits, and appeared under the influence at a visit. The petition also stated that respondent father did not obtain suitable housing for DH and canceled a scheduled home evaluation.

The trial court held a termination hearing on the supplemental petition over the course of several days beginning on August 12, 2019. Respondents were not present on any of the dates scheduled for the hearing. The trial court found that both respondents were ordered to complete a parent-agency treatment plan, but other than attending visits, they failed to complete any portion of the plans. The trial court found statutory grounds to terminate both respondents' parental rights.

At the best-interest hearing[3] on December 17, 2019, the trial court considered the best-interest factors stating that (1) the guardian ad litem and the caseworkers agreed that it was in DH's best interests to terminate respondents' parental rights, (2) it was likely that DH would be adopted by his foster mother if respondents' parental rights were terminated, (3) DH is too young to have an opinion over his placement, (4) DH had a relationship with his maternal grandmother while placed with her, but he may be able to continue a relationship with biological relatives even if adopted by his foster mother, (5) DH did not have special needs, (6) there were cultural considerations because DH is black and the foster family is white, but issues arising from the racial differences could be addressed "with sensitivity" by his adoptive parent, (7) DH had been in foster care for a long time and he was reaching a critical age of development and placement in too many foster homes could have a negative effect, and (8) DH did not have any biological siblings to which he could be bonded. Therefore, the trial court found that it was in DH's best interests to terminate respondents' parental rights and for DH to be adopted by his foster mother because he needed stability, and the foster family would likely encourage a relationship between DH and his biological relatives.

These appeals followed.

## II. STATUTORY GROUNDS

Respondent mother argues that the trial court erred in finding statutory grounds to terminate her parental rights to DH under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree.

In order to terminate parental rights, a trial court must find that a statutory ground has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The trial court's findings regarding statutory grounds are reviewed for clear error. *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. (quotation marks and citation omitted).

---

[3] The trial court noted that respondents also did not appear for the best-interest hearing.

The trial court did not clearly err by terminating respondent mother's parental rights to DH pursuant to MCL 712A.19b(3)(c)(*i*). A trial court may terminate parental rights pursuant to MCL 712A.19b(3)(c)(*i*) if 182 or more days have elapsed since the issuance of an initial dispositional order, and the court finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

On January 10, 2018, the trial court entered an order of disposition for respondent mother. Therefore, more than 182 days had passed when the trial court terminated respondent mother's parental rights on December 17, 2019. The trial court took jurisdiction of DH as a result of respondent mother's substance abuse and her admissions that DH tested positive for opiates and experienced withdrawal symptoms at birth, and that she tested positive for opiates and benzodiazepines at the time of DH's birth. Respondent mother also admitted that she tested positive for heroin and morphine on June 12, 2017.

The record supports the trial court's conclusion that respondent mother failed to rectify the conditions that led to adjudication. At the termination hearing in November 2019, it was reported that, as of October 2019, respondent mother had failed to submit to any random drug screens. Respondent mother told Tiekma Taylor, the foster care worker, that she had not submitted to drug screens because she did not trust the results, had transportation issues, and her work schedule conflicted with the drug screens. However, Taylor had not been able to verify respondent mother's work schedule. Additionally, in November 2018 and December 2018, a foster care worker offered to drive respondent mother to her drug screens, but she refused. Also, respondent mother was provided with monthly bus passes. In March 2019, almost two years after DH was removed from respondent mother's care, respondent mother was ordered to take a drug screen following a trial court hearing and she tested positive for heroin. Taylor asked respondent mother to submit to drug screens during parenting visits, including at a visit on July 1, 2019, but respondent mother refused. Taylor saw respondent mother appear to be under the influence at more than one parenting visit, including a visit on July 30, 2019. Respondent mother had participated in individual therapy, which was designed to assist with substance abuse, but the therapist reported that respondent mother only partially benefitted, and the therapist did not think she was honest about her drug use. Thus, the evidence indicates that, throughout the proceedings, respondent mother continued to test positive for illegal substances, and failed to participate in drugs screens despite efforts to assist her.

In sum, the trial court did not err when it found by clear and convincing evidence that termination of respondent mother's parental rights was proper under MCL 712A.19b(3)(c)(*i*) because 182 days or more had elapsed since the initial disposition order was entered and respondent still had not rectified the condition—her substance abuse—that led to adjudication. In addition, because respondent mother had made essentially no effort to stop using illegal substances at the time her parental rights were terminated, the trial court did not err in concluding that there

was no reasonable likelihood that this condition would be rectified in a reasonable time considering DH's age.[4]

On appeal, respondent father only states that it is his "contention that clear and convincing evidence warranting termination under [MCL 712A.19b(3)(c)(*i*), (g), and (j)] was not warranted." In fact, respondent father concedes that he failed to comply with any aspect of his parent-agency treatment plan other than to visit with DH. Because respondent father sets forth no argument regarding statutory grounds, to the extent respondent father intended to argue that insufficient evidence was presented to warrant termination under any of the statutory grounds, the argument is abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]" *Houghton ex rel Johnson v Keller*, 256 Mich App 336; 662 NW2d 854 (2003).[5]

## III. BEST INTERESTS

Respondents argue that the trial court erred in determining that it was in DH's best interests to terminate their parental rights. We disagree.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews the trial court's ruling that termination is in the child's best interests for clear error. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of

---

[4] Only one statutory ground needs to be established to support termination of parental rights under MCL 712A.19b(3). *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). Because termination of respondent's parental rights was appropriate based upon MCL 712A.19b(3)(c)(*i*), we need not address MCL 712A.19b(3)(g) and (j).

[5] Even if we addressed respondent father's contention, we would conclude that the trial court did not clearly err by terminating respondent father's parental rights under MCL 712A.19b(3)(c)(*i*). The trial court entered its dispositional order on June 18, 2018, so more than 182 days had passed by the time of the termination hearing on December 17, 2019. Conditions that led to respondent father's disposition included lack of suitable housing, failure to verify his employment, and a risk of harm to DH. The trial court ordered respondent father to, among other things, maintain a legal source of income and obtain suitable housing. As respondent father admits in his brief, he did not complete any aspect of his treatment plan save visiting DH. Because almost 18 months had passed since his disposition and respondent had not made any significant progress, there was no reasonable likelihood that he would be able to obtain suitable housing and employment within a reasonable time. On the basis of this evidence, the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Both respondent mother and respondent father argue that the trial court erred in concluding that it was in DH's best interests to terminate their parental rights because the trial court should have instead placed DH in a guardianship with his maternal grandmother. In addition, respondents contend that DH needed to be placed in a guardianship with his maternal grandmother in order to maintain relationships with his relatives and learn about his heritage. "[T]he appointment of a guardian is done in an effort to avoid termination of parental rights. *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). "Unlike termination of parental rights, the appointment of a guardian for a juvenile is not necessarily permanent." *Id*. "[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *Id*. at 707. In addition, "the court must find that it is in the child's best interests to appoint a guardian." *Id*.

The trial court did not clearly err in concluding that it was in DH's best interests to terminate respondents' parental rights. The trial court considered the recommendation of the Foster Care Review Board, which did not support DH's reunification with respondent mother or respondent father because DH "had been in care for 27 months, the issues that brought him into care still exist, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering [DH's] age." As explained above, the trial court also weighed all of the best-interest factors, including the testimony from the case workers and the guardian ad litem, the length of time that DH had been in foster care, and ethnic and cultural considerations. The trial court found that other than visiting DH, respondents' were almost completely noncompliant with their parent-agency treatment plan, and it noted that their attitudes toward the treatment plan made it highly unlikely that this would ever change. Therefore, the trial court determined that it was in DH's best interests for respondents' rights to be terminated and for DH to be adopted by his foster family.

The evidence presented during the best-interests hearing supports the trial court's decision to terminate respondents' parental rights instead of placing him in a guardianship. Respondents' contend that DH should not have been removed from his initial placement with his maternal grandmother. The record indicates that DH was removed from his maternal grandmother's care due to a history with CPS and allegations that she was leaving DH with individuals who had not undergone background checks or been cleared by the agency to care for DH. The maternal grandmother's CPS history was expunged on December 14, 2018, and her home was reevaluated. At the time of evaluation, Taylor testified that maternal grandmother had an adult daughter living in the home from North Carolina and the agency was unable to obtain a background check on the daughter. Taylor also testified that additional relative homes were evaluated as alternative placements, but no homes were found appropriate. Moreover, Taylor testified that a guardianship

is not a permanent option, and therefore, it would not provide the stability that DH needed. At the time respondents' parental rights were terminated, DH was almost three years old and needed permanency and stability. As stated previously, there was no indication that respondents would be capable of parenting DH in a reasonable time, and therefore, being placed in a guardianship would likely result in DH remaining in a temporary placement for a long period of time.

Further, the record indicates that DH had been placed with his foster family for approximately one year at the time of termination of respondents' parental rights. The foster mother met all of DH's needs, and he was bonded to the foster family, including the other child in the foster home. In addition, the foster mother indicated that she would likely adopt DH if respondents' parental rights were terminated. Therefore, adoption provided DH with the stability and permanence that he needed as opposed to a guardianship. Thus, the trial court did not clearly err in concluding that it was in DH's best interests under MCL 712A.19b(5) to terminate respondents' parental rights.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Thomas C. Cameron