# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J.R. MARTIN, Minor.

FOR PUBLICATION
June 23, 2016
9:05 a.m.

Nos. 330231; 330232
Wayne Circuit Court
Family Division
LC No. 15-520399-NA

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

MURPHY, P.J.

Respondent-mother and respondent-father appeal as of right the order terminating their parental rights to the minor child, a boy born in 2007, at the initial disposition (adjudication trial in combination with termination hearing) pursuant to MCL 712A.19b(3)(b)(*i*) (parent sexually abused child), (b)(*ii*) (parent failed to prevent sexual abuse), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child returned to parent). We affirm the order terminating respondent-mother's parental rights, reverse the order terminating respondent-father's parental rights, and remand for further proceedings with respect to respondent-father.

Petitioner alleged that respondent-father perpetrated an act of penile-anal penetration against the child. A medical record was entered into evidence containing this accusation as made by the child to the attending doctor, but no medical personnel testified at the trial/hearing. The evidence relied on by petitioner in support of the allegation was a DVD of a videorecorded interview of the child by an adolescent forensic interviewer, wherein the child upon questioning claimed that respondent-father had performed the alleged act of sexual penetration. Neither the forensic interviewer nor the child testified at the trial/hearing.[1]

---

[1] Respondent-mother did testify that a child protective services (CPS) worker had informed her of the alleged sexual abuse by respondent-father and that the child thereafter told respondent-mother "what happened and why he didn't tell me . . . ." The CPS worker testified at the trial/hearing, but she did not discuss the nature of any statements that the child made to her, and the full extent of respondent-mother's testimony on the subject of statements made by the child to her is reflected in the preceding sentence.

-1-

Respondent-mother was alleged to have performed a sexual act with a male stranger for money in front of the child in the man's van after having exchanged text messages with the stranger in order to arrange the encounter. An FBI agent testified that respondent-mother came to his attention when he was investigating the stranger. The FBI had arrested the stranger for attempting to have sex with an unrelated minor, and the execution of a search warrant attendant to the arrest resulted in the discovery of the text messages between the stranger and respondent-mother. A second FBI agent testified that he took respondent-mother in for questioning, and she admitted to the sexual act in the van in her son's presence. Respondent-mother told the agent that the stranger had initially responded by phone to a used-bike advertisement that she had posted on Craigslist and that the discussion quickly became sexual, eventually leading to the text messages and the sex act in the van. Petitioner also asserted that respondent-mother subsequently was prepared to commit a sexual act on the child in the presence of that same stranger for remuneration. The second FBI agent testified that after the first encounter in the stranger's van, the man and respondent-mother exchanged further text messages, along with speaking together on the phone. The FBI agent stated that respondent-mother informed him that one of the phone calls was on speaker phone with the child present, and the stranger had asked whether she would be willing to touch her son's penis in the man's presence. Respondent-mother told the FBI agent that at the end of the phone call, she asked the child if he would be willing to participate in the requested sex act, but he declined. The FBI agent further testified that respondent-mother conceded that a follow-up phone call occurred, that the stranger offered her $300 to engage in the above-described sex act with her son, and that the child now agreed to participate because he knew that the family needed money. The agent was unaware of whether the planned act ever transpired; respondent-mother did not tell him that it occurred. We note that there is nothing in the record indicating that the planned act took place.

The trial court found by a preponderance of the evidence that it had jurisdiction over the child under MCL 712A.2(b), given the sexual abuse by respondent-father as established by the child's claim of anal penetration made in the child's forensic interview captured on the DVD, and considering the sexual abuse by respondent-mother as established by the FBI testimony of her admitted engagement in a sex act in the presence of the child and her plan to participate in a sex act with the child himself in the presence of the aforementioned stranger. Having established jurisdiction relative to adjudication, the trial court next found that there existed clear and convincing evidence supporting termination under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j), effectively relying on the same evidence of sexual abuse by respondents. Finally, the trial court found that termination of parental rights was in the child's best interests in light of the trauma caused by the sexual abuse, the child's adamant desire not to see respondents and absolute fear of being returned to them, the child's placement in a safe and secure environment with persons willing to plan long-term for the child, and the child's need for permanence essential to his continued growth and development.

On appeal, both respondents contend that the trial court erred in admitting the DVD into evidence. Evidentiary rulings are reviewed for an abuse of discretion; however, we review de novo preliminary questions of law affecting the admission of evidence, e.g., whether a statute or rule of evidence bars admissibility. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). For purposes of a trial with respect to adjudication, a statement by a child under the age of 10 concerning and describing an act of sexual abuse performed on the child by another person may be admitted into evidence "through the testimony of a person who heard the child make the

statement," regardless of the child's availability, but only if the court finds at a hearing before trial "that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness." MCR 3.972(C)(2)(a); see *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 630; 853 NW2d 459 (2014); *In re Archer*, 277 Mich App 71, 80-81; 744 NW2d 1 (2007).[2] Here, as mentioned earlier, the forensic interviewer who heard the child's statements regarding sexual abuse by respondent-father did not testify at the trial/hearing. Rather, the interview of the child had been videorecorded, put on a DVD, and admitted into evidence in that format. Accordingly, the child's statements were not admitted in accordance with MCR 3.972(C)(2)(a).

MCL 712A.17b addresses, in part, videorecorded statements made by a witness under the age of 16 in a forensic interview undertaken by the state in connection with proceedings concerning the alleged abuse and neglect of the witness. MCL 712A.17b(5) provides that such "videorecorded statement[s] shall be admitted at all proceedings *except the adjudication stage* instead of the live testimony of the witness." (Emphasis added.)[3] Before the actual trial/hearing in the instant case got under way, the trial court conducted a tender-years hearing and watched the DVD, and the court concluded that the DVD was admissible under both MCR 3.972(C)(2)(a) and MCL 712A.17b.[4] The trial court later effectively relied on the child's videorecorded

---

[2] MCR 3.972(C)(2)(a) also provides that the "statement may be received by the court in lieu of or in addition to the child's testimony."

[3] MCL 712A.17b(6) mandates the following:

> In a videorecorded statement, the questioning of the witness should be full and complete; shall be in accordance with the forensic interview protocol implemented as required by section 8 of the child protection law, 1975 PA 238, MCL 722.628; and, if appropriate for the witness's developmental level, shall include, but need not be limited to, all of the following areas:
>
> (a) The time and date of the alleged offense or offenses.
>
> (b) The location and area of the alleged offense or offenses.
>
> (c) The relationship, if any, between the witness and the respondent.
>
> (d) The details of the offense or offenses.
>
> (e) The names of other persons known to the witness who may have personal knowledge of the offense or offenses.

[4] The hearing did not pertain to any evidence other than the child's videorecorded statements. There was no effort to seek admission under MCR 3.972(C)(2)(a) of any statements made by the child to the CPS worker, to respondent-mother, or to medical personnel who had examined the child.

statements contained in the DVD, not live testimony, in determining that it had jurisdiction over the child relative to respondent-father. But pursuant to MCL 712A.17b(5), the trial court was not permitted to substantively consider the DVD for purposes of adjudication and, as noted above, MCR 3.972(C)(2)(a) could not have been relied on in relation to adjudication, given that the forensic interviewer did not testify about the child's statements, even assuming that there were adequate indicia of trustworthiness.

It is plain to us that MCR 3.972(C)(2)(a), which expressly applies to adjudication trials, and MCL 712A.17b, which expressly does not apply to the adjudication stage, work in tandem. MCR 3.972(C)(2)(a) forces petitioner to produce at trial any witness claiming that a child victim made statements of abuse heard by the witness if petitioner wishes to rely on such statements in its case, subject to the existence of circumstances indicating trustworthiness. This allows the accused parent the opportunity to at least cross-examine that witness. MCL 712A.17b(5) not only permits but mandates admission of a videorecorded statement ("shall be admitted") in regard to any proceeding other than one at the adjudication stage, which would necessarily include a termination hearing, as long as the prerequisites set forth in MCL 712A.17b(5) and (6) are satisfied, e.g., the questioning must be in accordance with forensic interview protocol.[5] In a situation such as the case at bar, the proper procedure would entail having the forensic interviewer testify in regard to the adjudication stage, assuming compliance with MCR 3.972(C)(2)(a), followed by substantive consideration of the forensic interview displayed on the DVD with respect to the termination stage, assuming compliance with MCL 712A.17b.

To be clear, "MCL 712A.17b(5) requires a trial court to admit videorecordings of a child's forensic interview during a nonadjudicatory stage[,]" such as "a tender-years hearing" conducted before trial. *In re Brown Minors*, 305 Mich App at 632. And a trial court does not commit error in admitting a DVD under MCL 712A.17b(5) at a pretrial tender-years hearing for the purpose of determining "whether the circumstances surrounding the giving of . . . children's statements provided adequate indicia of trustworthiness to warrant their admission at trial *through the testimony* of [the DVD forensic interviewer] under MCR 3.972(C)(2)(a)." *In re Archer*, 277 Mich App at 83 (emphasis added). Stated otherwise, a videorecorded statement taken in compliance with MCL 712A.17b must be admitted at a tender-years hearing and can be used by the trial court to assess whether a proposed witness who took the videorecorded statement should be permitted to testify at trial about the statement, i.e., to assess whether "the circumstances surrounding the giving of the statement provide[d] adequate indicia of trustworthiness," MCR 3.972(C)(2)(a). The problem in the instant case is that the forensic interviewer did not testify at trial with respect to the child's statements made in the interview. The trial court did not employ the DVD to determine whether the forensic interviewer should be allowed to testify under MCR 3.972(C)(2)(a). Rather, the trial court substantively used the DVD, in and of itself, to adjudicate respondent-father.

---

[5] When termination is sought at the initial disposition, "clear and convincing legally admissible evidence" must be presented to establish the grounds for termination. MCR 3.977(E)(3).

In sum, the trial court erred by relying on the videorecorded statements contained in the DVD for purposes of adjudication. In *In re Sanders*, 495 Mich 394, 400-401; 852 NW2d 524 (2014), our Supreme Court declared that the one-parent doctrine, which permitted "a court to interfere with a parent's right to direct the care, custody, and control of the children solely because the other parent is unfit," was "unconstitutional under the Due Process Clause of the Fourteenth Amendment." The Supreme Court held "that due process requires a specific adjudication of a parent's unfitness before the state can infringe the constitutionally protected parent-child relationship." *Id.* at 422. Because adjudication in relation to respondent-father was determined solely on the basis of the DVD, we must reverse the order of adjudication and the order terminating his parental rights, which flowed from the adjudication order. We remand for new adjudication proceedings in compliance with MCR 3.972(C)(2)(a) and other applicable law in regard to the pending authorized termination petition concerning respondent-father.[6]

However, with respect to respondent-mother, the child's videorecorded statements contained in the DVD were essentially irrelevant in regard to the allegations against her, which were established through the testimony of the FBI agents. Accordingly, in connection with either adjudication or termination, assuming for the sake of argument that the DVD was inadmissible for purposes of the termination stage of the proceedings, respondent-mother cannot establish prejudice as any presumed error was harmless, and she is thus not entitled to reversal.[7] MCR 2.613(A); *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009) (applying harmless-error analysis in termination case).

Respondent-mother next alleges multiple instances of ineffective assistance of counsel. The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings; therefore, it must be shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent. *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002), overruled on other grounds in *In re Sanders*, 495 Mich 394.

---

[6] On appeal, counsel for the child agrees that there was error and that respondent-father is entitled to a remand for proper adjudication. Given our ruling, which effectively results in the deprivation of the trial court's jurisdiction, it becomes unnecessary to address respondent-father's arguments challenging the trial court's findings in regard to the statutory grounds for termination and the child's best interests.

[7] Respondent-mother concedes that the forensic interview of the child benefitted her for the most part, considering that the child indicated that he was not aware of the circumstances surrounding respondent-mother's alleged interactions with the stranger, and given that the child denied knowing the man when shown his picture. Nevertheless, respondent-mother argues that she was prejudiced because some of the child's statements during the interview regarded a male friend who was living with the child and respondent-mother, with the child indicating that the male friend used marijuana, had a gun, and beat respondent-mother. Contrary to respondent-mother's argument on appeal, the trial court, while reciting the child's statements concerning the male friend, never relied on that evidence when ruling on the statutory grounds or child's best interests.

Respondent-mother first contends that counsel should have moved to suppress her statements made to the FBI because the statements were involuntary and coerced, violating her Fifth Amendment rights. Assuming a constitutional violation, which is not in fact supported by the existing record, respondent-mother fails to direct us to any authority providing that the exclusionary rule is applicable in the context of abuse and neglect proceedings; therefore, she has failed to establish the requisite prejudice.[8]

Respondent-mother next argues that counsel was ineffective for failing to object to hearsay statements attributed to the stranger as testified to by the FBI agents and for failing to object on hearsay and foundational grounds with respect to the agents' testimony concerning the text messages. The record reflects that the testimony by the two FBI agents that briefly touched on statements made by the stranger and on the substance of the text messages was not offered to prove the truth of the matters asserted, but rather to explain how the FBI came to be involved in the matter and to explain the course of the investigation. See MRE 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). "Counsel is not ineffective for failing to make a futile objection." *In re Archer*, 277 Mich App at 84. Respondent-mother's foundational argument under MRE 901 is wholly undeveloped and thus waived. *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). Moreover, the text messages were not admitted into evidence, and a sufficient foundation was presented so as to allow the testimony of the FBI agents regarding the text messages. Additionally, respondent-mother has not established any prejudice, assuming deficient performance by counsel, given her admissions to the FBI agents.[9]

Respondent-mother also maintains that counsel was ineffective for failing to elicit and introduce favorable evidence regarding the child's best interests, relying in part on an affidavit by respondent-mother that is not part of the lower court record. Even accepting consideration of that affidavit, respondent-mother has failed to overcome the strong presumption that counsel's

---

[8] We note that in *In re T Minors*, 143 NM 75, 78; 172 P3d 1287 (NM App, 2007), the Court of Appeals of New Mexico, in rejecting application of the exclusionary rule in child protective proceedings, observed:

> We have found no cases, and the parties do not cite to any, in which any other jurisdiction has applied the exclusionary rule in the context of abuse and neglect proceedings. Other jurisdictions that have addressed the issue have held that the exclusionary rule should not apply in civil abuse and neglect proceedings because it may thwart the State's interest in the protection of children.

[9] We note that respondent-mother invoked her Fifth Amendment right against self-incrimination when asked whether she participated in the sexual conduct at issue, which invocation was indisputably permissible. *In re MU*, 264 Mich App 270, 283 n 5; 690 NW2d 495 (2004). That said, invoking the Fifth Amendment in an abuse and neglect proceeding, as opposed to a criminal proceeding, gives rise to "an adverse inference against the respondent in th[e] proceeding[.]" *Id.*

performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Regardless, any deficiency by counsel in introducing testimony or evidence relative to the child's best interests was harmless. Respondent-mother was prepared to partake in a sex act with her child for money in front of the stranger, after already having had sex with the stranger in front of the child. Respondent-mother was ready and willing to engage in the sex act with her child, because the eight-year-old boy "agreed" to the sex act on the basis that the family needed money. This perversion and abdication of respondent-mother's parental role as the child's caregiver dictated that it was in the child's best interests to terminate respondent-mother's parental rights. Absent the FBI's investigation of the stranger that led the agency to respondent-mother, the potential of additional harm to the child is incalculable. A foster care worker testified that the child did not want to be returned to his parents, that he had been traumatized by the ongoing court proceedings and the possibility of being returned to their care, and that the child had been undergoing intense therapy to address his emotional turmoil. Further, the foster care worker testified that the child's needs were being met in a very safe and suitable environment as part of a potential pre-adoptive placement. In the face of these circumstances, reversal is unwarranted on the claim that counsel should have submitted more best-interest evidence.

Finally, respondent-mother argues that counsel was ineffective for failing to insist that the child receive a trauma assessment that had been ordered by the trial court but apparently never conducted. Given the nature of respondent-mother's conduct and the testimony by the foster care worker regarding the child's traumatized state, respondent-mother fails to convince us that counsel's performance was deficient in failing to seek enforcement of the court's decision, nor has she established the requisite prejudice. The result of a trauma assessment, under the circumstances and existing record, could potentially have been more favorable to petitioner than respondent-mother. Thus, we are not prepared to fault counsel for shying away from pushing the trial court to enforce its decision. Counsel's performance was not deficient, nor, once again, can we find the necessary prejudice.

Lastly, respondent-mother contends that the trial court clearly erred in finding that the statutory grounds for termination were proven by clear and convincing evidence and in finding that termination was in the child's best interests.[10] With respect to MCL 712A.19b(3)(b)(*i*),

---

[10] If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). In applying the clear error standard in parental termination cases, "regard is to be given

which requires a showing that a child "has suffered . . . sexual abuse," respondent-mother argues that there was no evidence that she sexually abused the child, other than her "coerced and involuntary statements" made to the FBI. She thus effectively concedes that her confession made to the interviewing FBI agent constituted evidence of sexual abuse, and no error has been established regarding the admission of the testimony by the FBI agent concerning the confession.

In regard to MCL 712A.19b(3)(b)(*ii*), which addresses a failure by a parent to prevent sexual abuse, the record, while a bit unclear, appears to indicate that respondent-mother was alleged to have failed to protect the child from respondent-father's alleged sexual abuse, and that respondent-father was alleged to have failed to protect the child from respondent-mother's sexual abuse. Assuming that the DVD of the forensic interview was admissible relative to the termination stage of the proceedings, there is inadequate evidence of respondent-mother's failure to prevent the act of anal penetration allegedly perpetrated by respondent-father. Respondents, who were divorced, were not living together, and the alleged sexual act by respondent-father against the child supposedly occurred out of state while respondent-mother was in Michigan. The trial court clearly erred in relying on MCL 712A.19b(3)(b)(*ii*) as to respondent-mother.

The evidence of respondent-mother's conduct with respect to her interactions with the stranger as testified to by the FBI agents easily supported termination under MCL 712A.19b(3)(g) (failure to provide proper care or custody) and (j) (likelihood of harm to the child if returned to parent's care), and there was no clear error by the trial court in relying on those grounds to support termination. In sum, we hold that the trial court did not clearly err in finding that the statutory grounds for termination in MCL 712A.19b(3)(b)(*i*), (g), and (j) were proven by clear and convincing evidence. Because only a single statutory ground need be established in support of termination, MCL 712A.19b(3); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), the error in regard to MCL 712A.19b(3)(b)(*ii*) is irrelevant.

Finally, for the reasons stated by the trial court and those set forth by us in our earlier discussion of the child's best interests, there was no clear error in the court's finding that termination of respondent-mother's parental rights was in the child's best interests. See *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

We affirm the order terminating respondent-mother's parental rights, reverse the order terminating respondent-father's parental rights, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello

---

to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).