*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re D. T. WILLIAMS, Minor.

UNPUBLISHED
June 22, 2023

No. 363053
Wayne Circuit Court
Family Division
LC No. 2018-000896-NA

Before: SWARTZLE, P.J., and CAVANAGH and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor child DTW under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

## I. BACKGROUND

In September 2019, petitioner Department of Health and Human Services (DHHS) filed a petition seeking temporary jurisdiction over DTW. The petition alleged that respondent had ongoing domestic violence, substance abuse, and untreated mental health issues.[1] The petition also alleged that respondent was noncompliant with her mental health regimen and that respondent admitted she "snaps" when she is overwhelmed. DTW was placed with a relative caregiver.

After respondent made admissions, the trial court exercised jurisdiction over DTW. Respondent admitted that her three older children had been under the court's jurisdiction since June 2018 despite numerous services DHHS had provided. Respondent also admitted that she was diagnosed with mental health issues, was not in treatment when DTW was born, and was not taking her prescribed medication. Respondent recognized that her failure to address her mental health issues affected her ability to properly care for her children. Additionally, respondent did not have safe and suitable housing for DTW. The court ordered respondent to follow the same treatment plan in place as to her older children, including parenting classes, individual therapy, regular visits,

---

[1] The child's putative father died before his birth.

domestic violence classes, and mental health counseling. The court also ordered respondent to complete drug screens, complete a psychological evaluation, obtain suitable housing, and obtain a legal source of income. Numerous dispositional review and permanency planning hearings were held over the next two years.

In January 2022, petitioner filed a supplemental petition seeking to terminate respondent's parental rights to DTW, alleging that respondent had neglected to care for him and failed to complete her treatment plan. The trial court held additional hearings and concluded that petitioner established statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j),[2] and that termination of respondent's parental rights was in the child's best interests.

## II. STATUTORY GROUNDS

The trial court did not clearly err when it determined that petitioner presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j).[3]

A trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence in order to terminate a respondent's parental rights. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The trial court's findings regarding the statutory grounds are reviewed for clear error. *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. (quotation marks and citation omitted).

### A. MCL 712A.19b(3)(c)(*i*)

Respondent argues that the trial court clearly erred when it determined that petitioner presented clear and convincing evidence to support termination of her parental rights under MCL 712A.19b(3)(c)(*i*). We disagree.

---

[2] Although the trial court referenced MCL 712A.19b(3)(a)(*ii*) as an additional statutory ground, it only discussed that ground (abandonment) as to the child's "unknown biological father[.]" Because there were no factual findings supporting abandonment as to respondent, this ground for termination was unsupported.

[3] On appeal, respondent contends that termination was also improper under MCL 712A.19b(3)(c)(*ii*). Because the trial court's termination order failed to address that statutory ground, we will not further address it.

Although the trial court concluded that there were statutory grounds to support termination of respondent's parental rights to her three older children, it determined that termination was not in their best interests. Instead, it determined that a subsidized legal guardianship was appropriate for them.

A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds by clear and convincing evidence that 182 days or more have elapsed since the initial dispositional order was entered and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." In this case, the initial order was entered in December 2019; thus, more than 182 days had elapsed when the trial court terminated respondent's parental rights in July 2022.

The conditions that led to adjudication were respondent's three older children being under the court's jurisdiction, her mental health issues, her noncompliance with medication addressing her mental health issues, and her lack of a suitable home. The record reflects that DHHS also sought termination of respondent's parental rights to her older children. The underlying issues involved in that case were respondent's alcohol abuse, respondent's mental health diagnoses, and a domestically-violent relationship in the children's presence. In this case, respondent was terminated from her mental health therapy sessions, was rereferred twice by DHHS, and remained "inconsistent" with attending the individual therapy. Respondent also failed to inform DHHS whether she was compliant with medication prescribed to address her mental health issues, candidly admitting that she had not taken her medication "for a long time" and that she only began to take her prescribed medications before the termination hearing. In other words, for years, respondent failed to rectify the mental health issues that interfered with her ability to parent DTW. And, despite DHHS's assistance with filling out housing application and referrals to low-income housing services, respondent still did not have suitable housing at the time of the final termination hearing. Given the evidence presented, the trial court did not clearly err in finding that there was no reasonable likelihood that respondent would rectify the conditions that led to DTW's adjudication within a reasonable time given his young age. Thus, termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*).

## B. MCL 712A.19b(3)(j)

Although only one statutory ground is necessary to terminate parental rights under MCL 712A.19b(3), *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016), we address the other ground, MCL 712A.19b(3)(j), found by the trial court in the interest of completeness. Respondent again contends that there was insufficient evidence to support termination on this ground. We disagree.

A court may terminate parental rights under MCL 712A.19b(3)(j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

In this case, DHHS presented evidence that respondent did not comply with several terms of her service plan. Although respondent completed her domestic violence classes and parenting classes, it is questionable whether she benefitted from either because she continued to engage in

aggressive behavior and verbal altercations with the relative caregiver,[4] and she failed to visit the children consistently and yelled at them when she did attend. As to DTW, during one reporting period, respondent missed 27 out of 34 visits; during another, she had an attendance rate of only 62%. Respondent also "missed almost every visit" in the month before the final termination hearing.

Moreover, respondent did not complete any drug screens in the year before the supplemental petition was filed or complete her substance abuse therapy. And, as already discussed, respondent was terminated from her mental health therapy sessions, was rereferred twice by DHHS, and remained "inconsistent" with attending the individual therapy. Instead of complying with the medication regimen designed to address her mental health issues, she admitted that she did not take her medication "for a long time," and began doing so shortly before the termination hearing. On top of that, respondent was terminated from Infant Mental Health (IMH) services and failed to restart them despite being rereferred by DHHS.

Respondent also failed to maintain stable employment. Throughout the proceedings, respondent was either unemployed or she had a new job. At the final termination hearing, respondent claimed to have started a new job a day earlier; however, she failed to prove proof of income. And, despite DHHS's assistance with filling out housing application and referrals to low-income housing services, respondent did not have suitable housing throughout this case.

Although respondent had years to comply with the treatment plan, she failed to make efforts to complete its requirements until shortly before the termination hearings began. Given respondent's failure to comply with the terms of her treatment plan, the trial court did not clearly err when it determined that DTW would be harmed if returned to her care. *In re White*, 303 Mich App at 711.

## III. BEST INTERESTS

Respondent contends that the trial court clearly erred in determining that termination of her parental rights was in DTW's best interests. We disagree.

---

[4] Respondent also testified that there was a shooting incident during which the father of her three older children drove by her house and shot at her car and house. Respondent further testified that there was an incident of domestic violence involving her partner, resulting in a window being "knocked out." Although "the fact that [a] respondent was or is a victim of domestic violence may not be relied upon as a basis for terminating parental rights," "termination may be properly based on the fact that [a] respondent's own behaviors were directly harming the child or exposing them to harm." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022) (italics, quotation marks, and citations omitted). In this case, the trial court did not solely rely on respondent's status as a victim of domestic violence in its determination that DTW was likely to be harmed if returned to respondent's care. Rather, the court found respondent's untreated mental health issues, her failure to complete her service plan, and her lack of suitable housing placed DTW at risk of harm in respondent's care.

"[W]hether termination of parental rights is in the best interest of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. We review the trial court's findings and ruling that termination is in the child's best interests for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); MCR 3.977(K). "A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors," including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted). The trial court may also consider the child's "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption." *Id.* at 714. Additionally, the court must consider "whether termination is appropriate in light of the [child's] placement with relatives." *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

There is no evidence that DTW shared a bond with respondent. Respondent was inconsistent with visits and often missed or canceled them. The month before the final termination hearing, respondent "missed almost every visit" with DTW. DTW's foster care worker testified that respondent did not engage with DTW when she attended visits. Respondent herself stated that she is "still trying to build a bond with [DTW]." Furthermore, DHHS presented evidence that respondent did not demonstrate an ability to parent DTW. During visits, respondent did not engage with DTW and frequently let DTW watch television so that there were "days where [DTW did not] acknowledge [respondent] at all." And, rather than utilizing skills taught during parenting classes, respondent often yelled at DTW when he would not listen. Importantly, respondent was also terminated from IMH services and never completed the program. Respondent failed to maintain a steady source of income and still did not have suitable housing for DTW.

In contrast, DTW's paternal relative took him in shortly after his birth and met all of his needs. The relative provided consistent and suitable housing and the foster care worker observed a bond between the two. The record reflected that guardianship was explored, but not feasible. Moreover, given DTW's young age, it was not favored. And, at times, it appeared that the relationship between the relative caregiver and respondent was strained. See *In re Gonzales/Martinez*, 310 Mich App 426, 434-435; 871 NW2d 868 (2015). Thus, although placement with a relative generally weighs against termination, the trial court concluded that termination was necessary to provide DTW, who had special needs, with permanency, stability, and finality. Given the record below, the trial court did not clearly err by finding that it was in DTW's best interests for respondent's parental rights to be terminated.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Anica Letica