*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
July 18, 2024

*In re* L. VASQUEZ, Minor.

No. 368896
Midland Circuit Court
Family Division
LC No. 21-005304-NA

Before: RIORDAN, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, LV, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care or custody), and (j) (child will be harmed if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

The trial court exercised jurisdiction over LV in November 2021, after petitioner, the Department of Health and Human Services (DHHS) filed a petition for child protective proceedings.[1] The petition alleged that mother suffered from substance use disorder and admitted to using methamphetamine. The petition further alleged that mother lacked stable housing. Additionally, the petition noted that LV was diagnosed with autism and was enrolled in autism-related services through Community Mental Health (CMH), but CMH had to close and reopen

---

[1] Mother has two children, LV and JM. Although JM was named in the initial petition for child protective proceedings, he was later placed in the care of his biological father, GM. JM was not subject to the amended petition to terminate parental rights ultimately adjudicated by the trial court. The description of the relevant facts thus primarily focuses on LV. We additionally note that LV's biological father, LUV, had his parental rights to LV terminated in the same proceedings described herein. He does not participate in this appeal, nor has he filed a separate appeal to challenge the termination of his parental rights.

LV's case numerous times because of inconsistent attendance. After a preliminary hearing, a referee authorized the petition, but ordered that LV remain placed with mother.

In March 2022, DHHS filed a petition for protective custody and placement of LV. The petition indicated that mother was terminated from substance abuse treatment for nonparticipation, failed to attend weekly mental health services, and displayed erratic behavior consistent with mental instability or substance use during a meeting with a Children's Protective Services (CPS) worker. The petition further alleged that mother failed to ensure LV consistently attended appointments for autism-related services. It additionally stated that mother had been living in a hotel, but was currently homeless. After a removal hearing, the trial court entered an order removing LV from mother's care and placing her with DHHS.

An amended petition for child protective proceedings was also filed in March 2022. In addition to the allegations set forth in the initial petition and the petition for protective custody and placement, the amended petition alleged that mother was frequently late transporting LV to autism-related services. As a result, "[LV] ha[d] begun displaying issues with anger where she is wanting to hit and bite." The petition also noted that mother was not consistently participating in substance abuse treatment, and that she tested positive for amphetamine and methamphetamine in March 2022 after behaving erratically in front of a CPS investigator. It was indicated in the petition that in the past, mother used cocaine, methamphetamine, and heroin in front of one of the children and engaged in sex work in the home where they were living. At the time the petition was filed, mother was again homeless. Mother subsequently entered a plea admitting to the allegations set forth in the amended petition. Based upon mother's plea, the trial court found that there were statutory grounds to exercise jurisdiction over LV under MCL 712A.2(b)(1) and (2), and continued LV's placement with DHHS. Following a dispositional hearing, the trial court entered an order of disposition in which the trial court ordered mother to comply with and benefit from a case service plan (CSP).

Numerous dispositional review hearings were thereafter held, at which evidence was admitted demonstrating that mother was not complying with her CSP. In December 2022, the trial court suspended mother's parenting time because she appeared to be under the influence of drugs during a recent visit with LV. Following a dispositional review hearing in March 2023, the trial court ordered parenting time at the discretion of DHHS. Mother's parenting time was again suspended in June 2023 because her parenting time attendance was sporadic, and because she attended parenting time while under the influence of drugs.

In August 2023, DHHS filed a petition to terminate mother's parental rights to LV under MCL 712A.19b(3)(c)(i), (c)(ii), (g), and (j). The petition alleged that mother failed to participate in and benefit from the CSP. She missed numerous appointments with DHHS Homemaker Services designed to help her with "housing, budgeting, and transportation issues[.]" She had not secured stable employment, "did not submit any pay stubs and failed to maintain financial stability." She further failed to obtain safe and stable housing or successfully complete substance abuse treatment. The petition alleged that mother was asked to leave one rehabilitation center due to repeated rule violations. She failed to consistently attend parenting time, attending only five of 17 total visits scheduled between October and December 2022. Mother continued to struggle with substance use, missing "countless" drug screenings, and repeatedly tested positive for amphetamine and methamphetamine. Following a termination hearing, the trial court found that

-2-

DHHS presented clear and convincing evidence to support termination of mother's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The trial court also found by a preponderance of the evidence that termination of mother's parental rights was in LV's best interests. This appeal followed.

## II. ANALYSIS

## A. STATUTORY GROUNDS

Mother first argues that the trial court erred by ruling that petitioner presented clear and convincing evidence to support termination of her parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We agree that the trial court clearly erred when it determined that petitioner presented clear and convincing evidence to support termination of mother's parental rights under MCL 712A.19b(3)(g), but we conclude that this error was harmless because alternate statutory grounds for termination were established under Subsections (c)(*i*), (c)(*ii*), and (j).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). This Court reviews "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). A finding is clearly erroneous if the reviewing court is "left with a firm and definite conviction that a mistake has been made." *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020).

## 1. MCL 712A.19b(3)(c)(*i*)

Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate a respondent's parental rights if "182 days or more have elapsed since the issuance of an initial dispositional order, and . . . . the conditions resulting in adjudication remain present and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*). The conditions leading to the initial adjudication were mother's substance abuse, mental health, lack of stable employment, and lack of stable housing. With respect to substance abuse, evidence was presented at the termination hearing that despite attending numerous inpatient substance abuse programs and fully completing a program in March 2023, mother continued to test positive for amphetamine and methamphetamine throughout the proceedings. Further, mother missed numerous drug screens throughout the proceedings. It was additionally determined that mother attended parenting time with LV while under the influence of drugs in June 2023 and that she refused a drug screen requested by DHHS in July 2023.

With respect to mother's mental health, the trial court's finding was supported by evidence demonstrating that mother frequently failed to appear for therapy and psychiatric appointments. Mother reported bouts of depression that rendered her unable to get out of bed. Mother's inconsistent attendance affected her ability to work on her mental health goals and make progress in therapy. Additionally, according to a psychological evaluation that mother completed in May 2023, mother demonstrated significant emotional instability and a lack of emotional control.

The trial court's finding with respect to mother's lack of stable employment was also supported by the record. At various times during the proceedings, mother would report new employment but would state several days later that she quit or lost her new job. At no point did she submit pay stubs or other verification of her income or employment. Further, mother reported during the aforementioned psychological evaluation that she could not keep a job, which she attributed to transportation issues, lack of childcare, and emotional turmoil which rendered her unable to work.

As to mother's lack of stable housing, mother reported residing with her mother, LV's maternal grandmother, as well as with a boyfriend, at a hotel, and at various inpatient treatment facilities throughout the course of the proceedings. Mother argues that she resided with LV's grandmother at the time of the termination hearing and therefore had stable housing. However, evidence was presented that LV's grandmother previously kicked mother out of the home, and the two had a tumultuous relationship. At one point in February 2023, LV's grandmother called 911 because mother was very upset and was holding a knife. Police tasered mother when she refused to put down the knife and subsequently transported her to a hospital for mental health treatment. It is clear that LV's grandmother's house would not be a safe or stable home environment for LV. Thus, on this record, the court did not err by concluding that mother's housing situation remained unstable.

Overall, the aforementioned issues remained unresolved throughout the proceedings and lasted for well over the statutorily prescribed 182 days. Accordingly, the trial court did not clearly err by finding that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*).[2]

### 2. MCL 712A.19b(3)(c)(*ii*)

Under MCL 712A.19b(3)(c)(*ii*), a trial court may terminate a respondent's parental rights if 182 or more days have elapsed since the entry of an initial dispositional order and

> (1) the parent is the respondent in a child-neglect proceeding, (2) other conditions exist that cause the child to come within the court's jurisdiction, (3) the parent received recommendations to rectify those conditions and had a reasonable opportunity to do so and the respondent failed to rectify the other conditions, and (4) there is no reasonable likelihood she will do so within a reasonable time given the age of the child. [*In re Sanborn*, 337 Mich App 252, 273; 976 NW2d 44 (2021) (citation omitted).]

A trial court may find that other conditions exist that cause a child to come within the court's jurisdiction when conditions arise during the proceedings that are distinct from the conditions

---

[2] A trial court need only find that one statutory ground has been established to support termination of parental rights. *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). Nonetheless, we will address the additional statutory grounds for termination.

admitted by a respondent in their jurisdictional plea. *In re Pederson*, 331 Mich App 445, 475; 951 NW2d 704 (2020).

The trial court did not clearly err when it found that DHHS presented clear and convincing evidence that another distinct condition arose during the proceedings that would cause LV to come within the court's jurisdiction. In her jurisdictional plea, mother made admissions concerning substance abuse, mental health, lack of stable housing, and lack of stable employment. Following the termination hearing, the trial court found that mother's lack of transportation was another condition that caused LV to come within the court's jurisdiction. This finding was supported by evidence demonstrating that mother lacked reliable transportation and cited transportation issues as one of the reasons why she failed to consistently attend drug screens, appointments for mental health services, and could not keep a job. Further, mother testified at the termination hearing that transportation was a barrier for her. A statement made during her psychological evaluation additionally indicated that she had to ask 40 to 50 people for transportation assistance every day.

Mother testified that she could utilize public transportation, and evidence was presented demonstrating that she was offered bus tickets to assist with transportation to drug screens. Even so, mother still missed numerous drug screens throughout the proceedings. Her lack of reliable transportation was raised in the proceedings as early as December 2022. Mother was referred to services designed to assist with transportation, but her case was closed because she failed to appear for scheduled meetings. As earlier noted, LV was participating in daily or almost daily autism-related services for which she required consistent and reliable transportation. Mother's lack of transportation and failure to take advantage of resources designed to assist her with transportation issues negatively impacted her ability to care for LV by ensuring that LV regularly attended her daily appointments.

Mother's transportation issues, viewed in a vacuum, may not suffice to support a finding that termination was proper under MCL 712A.19b(3)(c)(*ii*). But the fact that her transportation issues directly impacted her ability to parent LV, namely by preventing her from getting LV to autism-related services in a consistent manner, suggests that statutory grounds for termination do exist under this subsection. We thus conclude that the trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(c)(*ii*).

### 3. MCL 712A.19b(3)(g)

A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(g) if "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g).

In discussing MCL 712A.19b(3)(g), the trial court stated that mother failed to adhere to her CSP by maintaining employment, and noted that a parent's failure to adhere to a CSP is an indicator that the parent will not be able to provide proper care and custody for a child. See *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). The court further found that mother failed to provide substantial financial support to LV. Although the court faulted mother for failing to maintain employment, it also expressly stated that mother could not do so due to her issues with

substance abuse. It further made no actual findings regarding mother's financial ability, although the record generally indicates that mother could not hold down a job for various reasons and did not provide pay stubs or other salary information. Without such information, it is difficult to discern how the court made a conclusive ruling that mother was financially able within the meaning of MCL 712A.19b(3)(g). We thus conclude that the trial court erred by terminating mother's parental rights under MCL 712A.19b(3)(g). However, because termination was proper under several other subsections of MCL 71A.19b, reversal is not required, as "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

### 4. MCL 712A.19b(3)(j)

A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(j) if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent."

Mother argues that termination was not appropriate under this subsection because DHHS did not present evidence demonstrating that LV suffered physical harm attributable to mother during parenting time. But DHHS need not present evidence demonstrating that a child sustained physical harm to warrant termination under Subsection (j). Rather, DHHS may establish statutory grounds for termination under this subsection by presenting evidence that the respondent failed to comply with the terms and conditions of a CSP. *In re White*, 303 Mich App at 711. The record indicates that mother failed to comply with the terms of her CSP by failing to successfully complete substance abuse treatment, complete drug screens and test negative for illicit substances, obtain safe and stable housing, and maintain employment. As earlier noted, "a parent's failure to comply with the terms and conditions of his or her case service plan is evidence that the child will be harmed if returned to the parent's home," *In re White*, 303 Mich App at 711. The record indicates that mother failed to successfully complete substance abuse treatment and drug screens, test negative for illicit substances, obtain safe and stable housing, and maintain employment, which were all conditions of her CSP. She has not demonstrated that she can provide safety and stability to LV moving forward, nor has she shown that LV would not continue to be in danger of abuse or neglect if returned to mother's care. Accordingly, the trial court did not err by finding that DHHS presented clear and convincing evidence to support termination of mother's parental rights under MCL 712A.19b(3)(j).

### B. BEST INTERESTS

Mother also argues that the trial court erred by ruling that termination of her parental rights was in LV's best interests. We disagree.

Once statutory grounds for termination are established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). This Court reviews a trial court's determination regarding the child's best interests for clear error. *In re Sanborn*, 337 Mich App at 276.

In general, "[t]he focus of the best-interests inquiry is on the child, not the parent." *In re MJC*, ___ Mich App at ___, ___ ; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 9. When evaluating whether termination is in a child's best interests, "[t]he trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. Factors to be considered in making the determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). The trial court may also consider the child's well-being while in care and the possibility of adoption. *Id*. at 714. "The trial court's findings need not be extensive; 'brief, definite, and pertinent findings and conclusions on contested matters are sufficient.' " *In re MJC*, ___ Mich App at ___; slip op at 10, quoting MCR 3.977(I)(1). Further, "[i]n making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

Mother argues that the trial court did not properly weigh all of the evidence presented regarding LV's best interests, and maintains that the record does not support the trial court's best-interests ruling. We disagree. In support of its ruling that termination was in LV's best interests, the trial court noted that LV was six years old and had been "in limbo for a very long time," as evidenced by the fact that LV had been in foster care for 17 months at the time of the termination hearing. The trial court found that LV has a heightened need for stability and permanency to ensure her continued development in light of her special needs, and that this factor weighed in favor of terminating mother's parental rights. This finding was supported by a psychosocial assessment of LV, which indicated that LV participated in autism-related services Monday through Friday, required assistance with medication management, access to health care and transportation, and continuous, full-time support and accommodations related to her autism diagnosis. The assessment also indicated that during her time in foster care, LV became fully independent with toileting, her communication skills increased, and she made progress with respect to her behavior.

This evidence supported the trial court's finding that LV's special needs created a heightened need for stability and permanency to ensure her continued development. The court observed that mother lacked reliable transportation, and the record indicates that mother failed to take advantage of DHHS resources to help her with transportation issues. Mother only periodically attended parenting time, and at one point attended parenting time while under the influence of drugs. This generally furthered the instability that LV had already come to expect from mother. Accordingly, the trial court could infer that mother was unable to provide LV with stability or facilitate the provision of autism-related services to LV.

As to LV's well-being while in care, the court found that this factor weighed in favor of terminating mother's parental rights. LV made significant strides toward developmental milestones while in care and was bonded with her foster family. The trial court also found that mother could not provide a safe home environment for LV within a reasonable time. This finding was supported by evidence that mother resided at numerous different places during the proceedings and had yet to find a stable home of her own. At the termination hearing, mother indicated that LV's grandmother's home was appropriate, in spite of evidence that mother and LV's grandmother had a seriously tumultuous relationship that had at one point resulted in police intervention. From

this evidence, the trial court could infer that mother lacked an understanding of what constitutes a safe and stable residence for LV.

The trial court also noted mother's failure to comply with and benefit from the CSP and found that this weighed in favor of termination. As we have already noted, the trial court could infer from mother's failure to participate in and benefit from her case service plan that she could not provide LV proper care and custody, and termination was, therefore, in LV's best interests. See *In re White*, 303 Mich App at 711. The court also found that LV had been the victim of instability, abandonment, and trauma as a result of mother's behavior, and that she required special parenting to overcome the effects of the trauma. This finding was supported by evidence of mother's lack of stable housing, infrequent parenting time attendance, and her decision to attend parenting time while under the influence of drugs. In general, the record indicated that mother lacked emotional control, lacked the stable housing and employment necessary to provide LV with stability, did not understand her role in the neglect and abuse case, and did not fully understand why LV was removed from her care. From this evidence, the trial court could infer that termination was in LV's best interests.

Mother nevertheless argues that the trial court failed to properly weigh the evidence. She points to the fact that at review hearings held on September 19, 2022, and April 25, 2023, the trial court found that mother was making progress toward rectifying the barriers to reunification. She also argues that she completed parenting classes, was getting mental health treatment through CMH, and shared a bond with LV. We find mother's argument unpersuasive. Though it is true that the trial court acknowledged some progress toward rectifying the barriers to reunification, the evidence demonstrated that the conditions which caused LV to come within the court's jurisdiction still existed at the time of the termination hearing, which occurred 17 months after LV was removed from mother's care. Moreover, the trial court acknowledged that mother completed some online parenting classes but still concluded that termination was in LV's best interests, observing that mother was not "suited in any way to meet the parental needs of this Child." With respect to mother's mental health treatment, the trial court found that she missed too many appointments to make progress or benefit from the treatment, and this finding was supported by testimony that mother frequently failed to appear for therapy and psychiatric appointments and failed to make any progress in therapy because of her inconsistent attendance.

Finally, with respect to mother's bond with LV, the trial court expressly found that LV did not have a significant bond with mother. This finding was supported by testimony from a foster care caseworker, who observed mother's parenting time with LV. The trial court determined that the caseworker's testimony was more credible than mother's testimony. This Court defers to the trial court's " 'special opportunity . . . to judge the credibility of the witnesses who appeared before it,' " *In re MJC*, ___ Mich App at ___; slip op at 9. Accordingly, for all the foregoing reasons, we conclude that the trial court did not clearly err by finding that termination of mother's parental rights was in LV's best interests.

Affirmed.

/s/ Michael J. Riordan
/s/ Michelle M. Rick
/s/ Noah P. Hood