*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HIGGINS, Minors.

UNPUBLISHED
July 15, 2025
11:50 AM

No. 373310
Lenawee Circuit Court
Family Division
LC No. 23-000156-NA

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to MLH, LMH, LJH, and MTH (collectively "the minor children"), under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical or sexual abuse and there is a reasonable likelihood of injury or abuse in the foreseeable future if child is placed in parent's home); MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent's home); and MCL 712A.19b(3)(k)(*ix*) (parent abused child or sibling of child, including sexual abuse). We affirm.

## I. FACTUAL BACKGROUND

This case was initiated after Children's Protective Services ("CPS") received a complaint alleging respondent-father sexually assaulted his daughter, MLH. MLH participated in a forensic interview, during which she disclosed multiple instances of sexual abuse and inappropriate behavior. The Michigan Department of Health and Human Services ("DHHS") petitioned to initiate child protective proceedings, requesting termination of respondent-father's parental rights to the minor children at initial disposition. The petition included discussion of and direct quotations from MLH's forensic interview.

A criminal investigation was also initiated. Throughout the pretrial process, DHHS attempted to obtain the completed copy of the police report. The Cambridge Township Police Department informed DHHS that DHHS would need to obtain the report from the prosecutor. DHHS received the police report the week before adjudication, and a copy was sent to respondent-father's counsel. At adjudication, respondent-father argued DHHS should not be permitted to use

the police report because it was late discovery. The trial court allowed DHHS to use the report to refresh the recollection of witnesses, but noted that DHHS did not intend to admit the report.

Respondent-father also objected to the trial court reading the petition to the jury because the petition quoted MLH's forensic interview. The trial court disagreed and read the petition to the jury. The forensic interview was referenced multiple times at adjudication. Officer Matthew Swirple ("Swirple"), of the Cambridge Township Police Department, testified the forensic interview benefited his investigation because it revealed criminal conduct. The jury was given a copy of the petition to view during deliberations.

The jury found that a preponderance of the evidence established a violation of the jurisdictional statutes, which led to the trial court's exercise of jurisdiction over the minor children, under MCL 712A.2(b)(1) and MCL 712A.2(b)(2). After a dispositional hearing, the trial court issued an order terminating respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*). The trial court also found termination was in the best interests of the minor children. This appeal followed.

## II. STANDARDS OF REVIEW

"Evidentiary rulings are reviewed for an abuse of discretion; however, we review de novo preliminary questions of law affecting the admission of evidence, e.g., whether a statute or rule of evidence bars admissibility." *In re Martin*, 316 Mich App 73, 80; 896 NW2d 452 (2016). "We review the interpretation and application of statutes and court rules de novo." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

## III. PETITION

Respondent-father argues that the trial court violated MCL 712A.17b(5) because quotations from MLH's forensic interview were read to the jury and the forensic interview was referenced during adjudication.

"To initiate a child protective proceeding, the state must file in the family division of the circuit court a petition containing facts that constitute an offense against the child under the juvenile code." *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014). The petition must include "[t]he essential facts that constitute an offense against the child under the Juvenile Code." MCR 3.961(B)(3). "[T]he respondent may demand a trial (i.e., an adjudication) and contest the merits of the petition." *In re Sanders*, 495 Mich at 405. During adjudication, "the respondent is entitled to a jury, the rules of evidence generally apply, and the petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *Id*. (citations omitted). At adjudication, "[t]he court shall read the allegations in the petition, unless waived." MCR 3.972(B)(2).

"MCL 712A.17b addresses, in part, videorecorded statements made by a witness under the age of 16 in a forensic interview undertaken by the state in connection with proceedings concerning the alleged abuse and neglect of the witness." *In re Martin*, 316 Mich App at 81. Under MCL 712A.17b(5), "[a] custodian of the videorecorded statement may take a witness's videorecorded statement. The videorecorded statement shall be admitted at all proceedings *except the adjudication stage* instead of the live testimony of the witness." MCL 712A.17b(5) (emphasis

added). In *In re Martin*, 316 Mich App at 84, we held that reversible error occurred where "adjudication in relation to respondent-father was determined solely on the basis of the DVD" of a child's videorecorded forensic interview played during adjudication.

We disagree with respondent-father that the trial court violated MCL 712A.17b(5) by reading the factual allegations in the petition to the jury during adjudication, which included direct quotations from MLH's forensic interview. [1]

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. . . . When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent. . . . [*Calvert Bail Bond Agency, LLC v St Clair Co*, 314 Mich App 548, 550-551; 887 NW2d 425 (2016) (quotation marks and citation omitted).]

Under the plain and ordinary meaning of the statute, MCL 712A.17b(5) is not a blanket prohibition of any reference to the forensic interview during adjudication. MCL 712A.17b(5) does not prevent the trial court from reading the factual allegations of the petition to a jury, nor does it prevent a jury from viewing the petition during deliberations, regardless of whether the petition quotes or references a forensic interview. Instead, MCL 712A.17b(5) only prohibits the admission of videorecorded forensic interviews during the adjudication stage. Here, no violation of MCL 712A.17b(5) occurred because a video recording of MLH's forensic interview was not admitted into evidence during adjudication. MLH provided live testimony, recounting her allegations against respondent-father.[2]

## IV. DISCOVERY

Respondent-father also argues that the trial court erred by allowing a police report to be used during adjudication, which respondent-father received only 4 days prior to adjudication, i.e., less than 21 days before adjudication.

---

[1] To the extent respondent-father argues the trial court violated MCL 712A.17b(5) by allowing the jury to have a copy of the petition during deliberation, this issue is waived. "[W]aiver is the intentional relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999) (quotation marks and citation omitted). Respondent-father initially objected to the jury receiving a copy of the petition, but later indicated he did not object to the jury receiving the petition.

[2] Respondent-father also suggests that the references to the forensic interview during adjudication impermissibly vouched for MLH's credibility. We agree with DHHS, however, that the record does not support this claim.

"The ultimate objective of pretrial discovery is to make available to all parties, in advance of trial, all relevant facts which might be admitted into evidence at trial." *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). Under MCR 3.922(A):

(1) The following materials are discoverable as of right in all proceedings and shall be produced *no less than 21 days before trial*, even without a discovery request:

(a) all written or recorded statements and notes of statements made by the juvenile or respondent that are in possession or control of petitioner or a law enforcement agency, including oral statements if they have been reduced to writing;

(b) all written or recorded statements made by any person with knowledge of the events in possession or control of petitioner or a law enforcement agency, including, but not limited to, police reports, allegations of neglect and/or abuse included on a complaint submitted to Child Protective Services, and Child Protective Services investigation reports, except that the identity of the reporting person shall be protected in accordance with MCL 722.625. . . . [MCR 3.922(A) (emphasis added).]

"Failure to comply with [MCR 3.922(A)(1)] may result in such sanctions in keeping with those assessable under MCR 2.313." MCR 3.922(A)(4). Under MCR 2.313(C)(1), "[i]f a party fails to provide information or identify a witness . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

The discovery delay was substantially justified. During the pretrial stage, respondent-father was the subject of an ongoing criminal investigation involving MLH's allegations of sexual conduct. DHHS reached out to the Cambridge Police Department on multiple occasions attempting to obtain the complete copy of the police report. After the Cambridge Police Department submitted the police report to the prosecutor, DHHS was informed it would need to obtain the report through the prosecutor's office. DHHS reached out to the prosecutor's office to obtain a copy of the complete police report in late March or early April 2024. DHHS did not receive the police report until the week leading up to adjudication. After DHHS received the police report, it sent a copy to respondent's counsel. The delay in discovery was substantially justified because DHHS made a continuous effort to obtain the report. DHHS did not receive the report until after the 21 day discovery deadline had passed.

Further, the discovery delay was harmless. First, DHHS and respondent-father had practically the same amount of time to review the police report. DHHS was not given any unfair advantage regarding the police report or evidence attached to the report. Second, and importantly, DHHS never sought to admit the report during adjudication. Instead DHHS used the report to refresh the recollection of its witness, Officer Swirple, regarding the nature of the dispatch offense. DHHS also used text messages attached to the report to refresh the recollection of respondent-father.

Although the text messages attached to the police report did support allegations made by MLH, the use of the messages during adjudication was not outcome-determinative. The jury heard

testimony from MLH, recounting allegations against respondent-father of sexual assault and inappropriate behavior, and that testimony was supported by the testimony of other witnesses. Because use of the police report was justified and harmless error, respondent-father was not denied a fair trial, and he is not entitled to a new adjudication.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock