*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE CHALKER/EVANS, Minors.

UNPUBLISHED
September 02, 2025
2:58 PM

No. 370716
Wayne Circuit Court
Family Division
LC No. 2002-410934-NA

Before: BORRELLO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating her parental rights as to her minor children, SMC, BSE, OFE, and AFE. She contends petitioner, Department of Health and Human Services (DHHS), did not make reasonable reunification efforts, the statutory grounds supporting termination were insufficient, and it was not in her children's best interests to terminate her parental rights. We affirm.

## I. BACKGROUND

This matter stems from a 2020 report of respondent being the victim of domestic violence by the father of BSE and OFE in front of the children in their home.[1] A Child Protective Services worker investigated and conducted a home visit. She discovered the home was in "deplorable" condition, lacked heat, had water damage caused by a water leak through a "large hole in the roof,"

---

[1] This was not the first time respondent suffered from domestic violence at the hands of BSE and OFE's father—2014 and 2015 incidents led to petitioner's involvement, which ultimately resulted in SMC and OFE being temporarily removed from respondent's care and petitioner providing numerous services including parenting classes, domestic violence therapy, and other services addressing mental health and housing. We also note that in November 2003, respondent voluntarily relinquished her parental rights to her two oldest children, MANE and RAA, because she was a minor and lacked family support.

and that the entire family slept together in the same bedroom with space heaters. Respondent also admitted having anxiety and depression, for which she used medical marijuana.

Petitioner filed a petition for temporary custody of SMC, BSE, and OFE in late 2020, asserting removal was appropriate due to: (a) domestic violence, (b) an unfit home, (c) neglect, (d) improper supervision, and (e) respondent's untreated mental health. Following AFE's birth in April 2021, petitioner filed a supplemental petition on substantially similar grounds concerning AFE.[2] The trial court granted the petition and supplemental petition, and, among other things, ordered respondent to obtain and maintain suitable housing and lawful income, remain in contact with a foster-care worker, engage in appropriate parenting time, participate in family therapy, attend all court hearings, and comply with a Parent-Agency Treatment Plan (PATP), which noted she would benefit from "supportive visitation," "a psychological evaluation," and counseling (including concerning domestic violence). It also eventually ordered random drug screens and substance-abuse evaluations. The children—who have special needs, some of which manifested in aggressive behavior and required mental-health services—were initially placed in foster homes (OFE, BSE, and SMC) and with a paternal grandmother (AFE), but SMC was subsequently placed with a relative caregiver.

In September 2022, the trial court found reasonable efforts were made toward reunification but noted the case was two years old, and respondent was not "putting in that much effort." So it directed DHHS to file a petition seeking to terminate respondent's parental rights, and ordered respondent to have individual counseling and "any mental health services," as well as additional family therapy. Petitioner made its motion in April 2023, which the trial court granted under MCL 712A.19b(3)(c)(*i*), (g), and (j) following a hearing. It again found reasonable efforts were made toward reunification, but respondent was only partially compliant with her PATP and did not benefit from services. Specifically, the trial court noted housing and income remained issues for respondent. It also found by a preponderance of the evidence it was in the best interests of SMC, OFE, BSE, and AFE to terminate respondent's parental rights. Noting the children were in care for "over three years," the trial court concluded respondent did not "appropriately address" the issues which led to the petition; "failed" to complete her PATP; and was unable to "rectify the conditions that brought the children into care within a reasonable period of time considering the children's ages." The trial court also considered each child's placement, respondent's ability to provide for the children, and the children's need for permanence. Respondent appeals.

## II. ANALYSIS

### A. REASONABLE EFFORTS

Respondent first contends the trial court clearly erred by finding petitioner made reasonable efforts toward reuniting respondent with her children. We disagree.

DHHS is statutorily obligated to make reasonable efforts to reunify families. MCL 712A.19a(2). It "must create a service plan outlining the steps that both it and the parent will take

---

[2] BSE, OFE, and AFE have the same father, but SMC was born to a different father. Both fathers were named in the petition and offered services under court-ordered parent-agency treatment plans.

to rectify the issues that led to court involvement and to achieve reunification." *In re Atchley*, 341 Mich App 332, 338-339; 990 NW2d 685 (2022) (quotation marks and citation omitted). While DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification," there "exists a commensurate responsibility" on a respondent-parent "to participate in the services that are offered . . . and demonstrate that they sufficiently benefited from the services provided." *Id*. at 339 (quotation marks and citation omitted).

This Court "review[s] for clear error the trial court's factual finding that petitioner made reasonable efforts to reunify respondents with the child. A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 338 (quotation marks and citations omitted). Here the trial court concluded DHHS made numerous efforts to help respondent find housing and effectively parent her children (and in the case of the three older children, such efforts persisted for three years). That finding was not clearly erroneous.

Following the PATP, petitioner referred respondent to numerous services, which respondent sometimes utilized and derived some benefit. In the beginning, respondent's parenting time was going well, and she had a supportive visitation coach. Respondent also completed a 16-week program for supportive visitation, attended therapy, had "clean" drug screens (when she took them), and had a psychological evaluation. But housing and employment remained a barrier, and her lack of appropriate parenting skills increasingly became an issue.

Petitioner thus made numerous additional housing referrals and provided gas cards to address transportation barriers to no avail. So the trial court, in mid-2022, found respondent's barriers to full compliance were "housing and income." By September 2022, a foster-care worker reported that respondent only achieved "minimum progression" as to housing and income, needed to display better parenting skills because she acted inappropriately during parenting time, and required additional individual counseling to address her "mental health needs." Petitioner again made referrals to meet respondent's needs to no success, leading the trial court to comment that the case was two years old, and respondent was not "putting in that much effort above and beyond some basic stuff."

After petitioner filed the termination petition, respondent attended family therapy with her children but still lacked housing and employment. In November 2023, respondent completed parenting classes and supportive visitation but did not benefit from the services—a foster-care worker again raised concerns regarding respondent's interactions with the children and her ability to keep them safe. (In one notable example, respondent did not intervene when BSE attacked his young siblings.) Although respondent completed a psychological evaluation and received individual counseling (and was referred to another when she lost her therapist), the case worker opined respondent did not benefit from therapy because she was "often combative" and further noted his interactions with respondent were, on her part, "often hostile" and that she lacked the ability to maintain instructional control and did not "actively engage and try to redirect" the children. Moreover, family-therapy services involving BSE and OFE were "egregious," and confusing to them. The case worker also noted respondent failed to obtain suitable housing despite the "countless referrals made" for housing assistance. Finally, the case worker was unable to verify respondent's claim of income. For these reasons, the case worker concluded respondent did not

show progress in her ability to parent, rectify the issues related to income and housing, and that respondent was unable to keep the children safe or provide suitable housing.

Other support personnel came to similar conclusions. In February 2024, a program manager found respondent "lack[ed] control over the children"; none of the parenting time sessions were successful; respondent lacked housing, employment, and income; and she did not get along with her parent partner (and was referred to a new parent partner). She also noted respondent had "several" housing referrals (but commented unsuccessful referrals to Section 8 housing were not respondent's fault because no housing was available). Nor did the program manager (and contrary to respondent's assertion on appeal) believe additional time would help respondent with housing and income. This is so, because of the "numerous referrals" made to respondent, of which she did not take advantage.

We thus cannot agree with respondent's assertions there was a "hole" in the evidence demonstrating petitioner did not provide her with adequate services. Rather, the record supports the trial court's determination that petitioner made the necessary referrals to help respondent address the barriers to reunification with her children and that additional time to comply with her PATP was not necessary. Nor are we persuaded that she was entitled to additional housing assistance and was not referred for more specialized parenting classes despite being willing to participate—the trial court appropriately concluded those would not have benefitted her because she demonstrated little to no benefit from the services already offered over several years. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005) ("The fact that [the] respondent sought treatment independently in no way compels the conclusion that [the] petitioner's efforts toward reunification were not reasonable, and, more to the point, does not suggest that respondent would have fared better if the worker had offered those additional services to him."). To the extent respondent argues insufficient services were provided, respondent did not "establish that she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App 252, 266; 976 NW2d 44 (2021). Finally, we are unpersuaded by respondent's contention she was not referred for "any specialized parenting classes"—she received parenting classes even before these proceedings commenced, as well as additional support toward becoming a better parent throughout these proceedings.

## B. STATUTORY GROUNDS

Respondent asserts the trial court clearly erred by finding there were statutory grounds for termination of her parental rights. On clear error review, *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014), we disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). It "may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.997(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.997(H)." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020).

-4-

The trial court found grounds for terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). We focus on MCL 712A.19b(3)(c)(*i*), which authorizes termination when 182 days "have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

There is no dispute that 182 days elapsed since the applicable initial dispositional orders: the trial court entered an initial dispositional order as to SMC, BSE, and OFE on January 4, 2021, and the disposition as to AFE was completed on June 2, 2021. The trial court's March 15, 2024 termination was more than 182 days after.

The conditions leading to the adjudication of the children as temporary court wards were (a) domestic violence, (b) an unfit home, (c) neglect, (d) improper supervision, and (e) respondent's untreated mental health. Of importance during the proceedings, respondent never obtained suitable housing. Respondent was unable to make "small down payment[s]" or show "proof of income." She also never verified her employment status or income from any of her jobs and admitted she never secured her own housing despite referrals.

Further, respondent lacked the ability to properly parent her children because of unaddressed mental-health concerns and inability to supervise the children. Despite receiving parenting classes, supportive visitation, a psychological evaluation, and therapy, respondent did not benefit from the services and instead was "often combative." True, she attended her parenting time sessions, but case workers had a "plethora of concerns in regards to the safety of the children." Specifically, respondent did not maintain "instructional control of her children" or "actively engage and try to redirect" them. Instead, on some occasions, workers intervened to ensure the safety of the children—for example, BSE attacked his siblings and respondent sat idly by. And on another occasion, for example, AFE would try to run out of the room and would otherwise be uncontrollable. Based on personal observations, a case worker concluded respondent did not show progress in her ability to parent, was not in a better position than when the case started, was unable to keep the children safe, and that her mental health was a barrier for her ability to care for her children. In sum, respondent did not have the ability to properly care for her children and was unable to rectify the issues in a reasonable amount of time. The "totality of the evidence amply" thus supports the trial court's conclusion that respondent "had not accomplished any meaningful change in the conditions existing by the time of adjudication." *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

The record also does not indicate respondent could rectify the issues in a reasonable amount of time considering the children's ages. When the trial court terminated respondent's parental rights, SMC was fifteen years old, OFE was seven years old, BSE was five years old, and AFE was two years old. SMC, BSE, and AFE had been out of respondent's care since December 9, 2020, and AFE was never in respondent's care. The record does not show respondent was able to rectify her ability to take proper care of the children in a reasonable amount of time.

Because only one statutory ground must be established to terminate respondent's parental rights, and termination was proper under MCL 712A.b(3)(c)(*i*), we need not consider additional

grounds for termination. See *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016) ("[O]nly a single statutory ground need be established in support of termination.").

## C. BEST INTERESTS

Respondent contends the trial court erred by finding it was in her children's best interests to terminate her parental rights. "We review for clear error the trial court's determination of best interests," *In re Sanborn*, 337 Mich App at 276 (quotation marks and citations omitted), and issues of statutory interpretation and family division procedures under the court rules de novo, *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). Through these lenses, we find no error meriting reversal.

"Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). "[I]f the best interests of the individual children significantly differ, the trial court should address those differences when making its determination of the children's best interests." *In re White*, 303 Mich App at 715-716. The trial court does not err "if it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *Id*. at 716.

When a trial court makes a best-interest determination, it "may consider the whole record, including evidence introduced by any party." *In re Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted). Numerous factors inform this determination, including: "The child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, . . . finality, . . . the advantages of a foster home over the parent's home, . . . the child's age, inappropriate parenting techniques, . . . continued involvement in domestic violence, . . . visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption." *Id*. at 276-277 (quotation marks and citations omitted).

A preponderance of the evidence supported a finding it was in the children's best interests to terminate respondent's parental rights. Notably, she lacked the ability to parent despite sharing a bond with her children. In 10 supervised parenting time sessions with respondent, for example, a case worker found respondent "lack[ed] control over the children" even when "directed," and had difficulty managing "all the children at once." During those sessions, respondent could not prevent the children "from writing on their faces or jumping off chairs," and in the case worker's view, none of the parenting time sessions were successful and instead required foster-care workers' intervention. True, the case worker acknowledged respondent's parenting time early in the case was remote because of the COVID-19 pandemic, but respondent did not benefit from services, regardless of whether they were virtual or in-person.

The trial court appropriately concluded other factors also weighed against her. Respondent lacked suitable housing and verified income and did not get along with any foster-care worker or

parent partner during the case. Regarding the children's need for permanency, finality, and stability, a case worker testified respondent was unable to provide the children permanence and stability, and respondent was not presently in a better position to parent than she was when the children were removed from her care. The case worker additionally did not believe more time would help respondent rectify the issues regarding housing and income and emphasized the "numerous referrals" made to respondent, of which she did not take advantage.

Nor do we discern error in the trial court's weighing of relative placement. "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re Atchley*, 341 Mich App at 347 (quotation marks and citations omitted). Contrary to respondent's contention, the trial court individually considered the children's placements and ages when weighing the best-interest factors. The record supports SMC and AFE being placed with relatives and BSE and OFE in a nonrelative foster home—all children were in care for three years and doing well. Further, foster placement addressed BSE and OFE's needs—each received treatment for special needs, and as a result, their behavior was "much improved," and BSE's aggression decreased. Indeed, BSE and OFE wish to remain with the foster parent and are "thriving" in their care. Regarding the possibility of adoption, the respective relative caregivers and foster parents are willing to adopt the children. In sum, the children are doing well in their respective placements and would be at risk of harm if returned to respondent's care.

Finally, the record supports the trial court's conclusion that respondent did not comply with or benefit from her PATP. To the extent respondent argues her court-ordered clinical evaluation was conducted inappropriately, there was nevertheless ample evidence showing she was unable to properly parent the children during other parenting time sessions.

III. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock