*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. M. BROWN, Minor.

FOR PUBLICATION
October 02, 2025
10:04 AM

No. 371986
Wayne Circuit Court
Family Division
LC No. 2020-001013-NA

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

K. F. KELLY, J. (*dissenting*).

I respectfully dissent from the majority's decision to vacate the trial court's order terminating respondent-mother's parental rights to KMB. While I recognize and agree with the majority's observation that respondent-mother's efforts towards reunification were generally positive, on this record, I am not left with a define and firm conviction that the trial court committed a mistake when it found adequate statutory grounds to terminate respondent-mother's parental rights. This is especially true in light of KMB's age and respondent-mother's failure to rectify the conditions that led to the adjudication over the course of more than three years. Additionally, I agree with the trial court's determination that termination was in KMB's best interests, particularly given the length of time that KMB was in care. Accordingly, I would affirm the trial court's order terminating respondent-mother's parental rights to KMB.

Under MCL 712A.19b(3)(c)(*i*), a ground for termination exists if "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014), citing MCL 712A.19b(3)(c)(*i*). Furthermore, if the parent is a respondent in a proceeding under this chapter, "182 or more days [must] have elapsed since the issuance of an initial dispositional order . . . ." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022), citing MCL 712A.19b(3)(c)(*i*). The termination of parental rights is warranted under this subsection when "the totality of the evidence amply supports" the finding that the parent has not achieved "any meaningful change in the conditions" that led to the trial court exercising jurisdiction over the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). A parent's failure to resolve issues relating to substance abuse, or a parent's continued inability to

provide adequate housing and financial support for a minor child may constitute clear and convincing evidence that termination is appropriate under MCL 712A.19b(3)(c)(*i*). *In re Frey*, 297 Mich App 242, 244-245; 824 NW2d 569 (2012).

As the majority notes, it is undisputed that more than 182 days elapsed from the issuance of the initial dispositional order and the termination proceedings. Therefore, the fundamental issue is whether the conditions that led to adjudication continued to exist and, if so, whether there was a reasonable likelihood that they will be rectified within a reasonable time considering KMB's age. I agree with the majority that respondent-mother's issues with domestic violence, substance use, and improper supervision led to the initial adjudication. However, I disagree with the majority's conclusion that respondent-mother rectified these conditions to the extent that the child can be safely reunified with her.

In making its statutory-grounds determination, the trial court noted that "[d]omestic violence between the mother and the father was a primary reason for the Court to take jurisdiction in the first place." Clearly, this condition was not rectified based on the record. During the evidentiary hearings, foster care worker Christina Albany testified that she did not believe respondent-mother benefited from counseling because of an additional domestic violence incident in April 2023, during which respondent-mother purportedly slapped respondent-father. Albany expressed that there was "mutual domestic violence" between respondents, as respondent-father displayed aggressive behavior, particularly when speaking to respondent-mother during parenting time sessions, and there were two occasions during which respondent-mother suffered from a black eye. Further, respondents' verbal disagreements during visitations had a negative impact on KMB, who exhibited concerning behaviors during and after parenting time sessions.

Albany further voiced concerns regarding the ramifications of respondent-mother maintaining a relationship with respondent-father, as the two were jointly planning for the minor child's care. Although separation between respondents was not a condition for reunification, Albany discussed with respondent-mother the potential implications of remaining with respondent-father if he continued to breach the terms of the case service plan, and respondent-mother testified that she recognized respondent-father impeded her reunification efforts. Respondent-mother was properly notified regarding the consequences of maintaining a relationship with respondent-father, and the record demonstrates that respondents' continued contact resulted in further domestic-violence episodes and hampered visitations with KMB.

With regard to substance use, Albany testified that respondent-mother was noncompliant with her substance screenings during the pendency of the case, completing only 3 out of 42 scheduled screenings and submitting 15 unscheduled drug screenings that did not qualify as random screenings under the case service plan. Albany requested that respondent-mother provide documentation from her employer on occasions when her work schedule prevented her from screening, but respondent-mother only provided one such letter. Further, respondent-mother tested positive for THC on 18 occasions. Although marijuana is no longer an unlawful substance under Michigan law, see *Yellow Tail Ventures, Inc v Berkley*, 344 Mich App 689, 694; 1 NW3d 860 (2022), Albany opined that given respondent-mother's prior substance abuse history, her exposure to substances could increase her possibility for a relapse.

I also share the trial court's concern with KMB's age and the length of time that the minor child was in care while respondent-mother engaged in services. While reunification appeared possible at the outset of the case, as respondent-mother appeared willing to communicate with DHHS, participated in recommended DHHS services, and engaged appropriately during parenting time visitations, the further the proceedings progressed, the more the prospect of reunification diminished. Ultimately, respondent-mother neglected to establish sufficient progress to warrant the extension of reasonable efforts toward reunification, particularly considering KMB's age at the time of removal—approximately seven weeks old—compared to the time of termination, approximately four years old. See *In re Sanborn*, 337 Mich App 252, 274; 976 NW2d 44 (2021) (stating that even if a respondent has participated in all the services that DHHS has offered, mere participation is not the same as overcoming the barriers justifying removal in the first place). Given the significant amount of time that respondent-mother had to engage in and benefit from services, the trial court did not clearly err by finding that the conditions that led to the adjudication continued to exist and were not reasonably likely to be rectified within a reasonable period of time.

I completely share the majority's concern with respondent-mother's housing serving as a basis for termination given the lack of any detail or evidentiary foundation to explain why the motel she resided in was inadequate. However, separate from the housing issue, I believe that the trial court properly found a statutory ground for termination under MCL 712A.19b(3)(c)(*i*), as detailed above. While termination may be justified under more than one statutory basis, only one basis under MCL 712A.19b(3) must be established by clear and convincing evidence to warrant termination of parental rights. *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). I would conclude that the trial court did not clearly err with respect to its statutory-grounds determination and that termination was properly supported under MCL 712A.19b(3)(c)(*i*).

I would further conclude that the trial court did not clearly err when it determined that termination of respondent-mother's parental rights under MCL 712A.19b(5) was in the best interests of KMB. "Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In rendering its decision, the trial court "should weigh all evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Atchley*, 341 Mich App at 346-347 (quotation marks and citation omitted).]

In this case, DHHS presented detailed testimony regarding respondent-mother's noncompliance with the case service plan. During the best-interest proceedings, foster care

supervisor Nicole St. Aubin testified that respondent-mother had a recent substance screening that was positive for cocaine and marijuana, and that respondent-mother was also terminated from substance abuse counseling due to her nonparticipation. Further, respondent-mother participated in only three out of seven offered visitations since the previous hearing and failed to maintain contact with DHHS. St. Aubin did not believe the provision of any additional services would assist respondent-mother with reunification.

Both Albany and St. Aubin believed that the minor child and respondent-mother possessed a bond, however, the caseworkers did not believe that KMB recognized respondent-mother as a parental figure. The admitted clinic evaluation regarding respondent-mother further provided:

> Individuals who are unable to identify their shortcomings are unlikely to rectify such issues so they might be better able to protect children in the future. [KMB] has waited all his life to be afforded permanency, stability, safety and nurturance. This child must not be made to wait any longer in another permanency plan, not excluding termination of parental rights should be pursued must be pursued [sic], as this would be consistent with his best interest.

The trial court did not clearly err when it determined that termination of respondent-mother's parental rights was in KMB's best interests. This Court has acknowledged that "[a] parent's right to control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *In re Richardson*, 329 Mich App 232, 251; 961 NW2d 499 (2019) (quotation marks and citations omitted; alteration in original). Importantly, "at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013).

While respondent-mother contends that the trial court failed to consider the relative placement of KMB, the minor child was residing in a licensed, nonrelative foster home at the time of the termination proceedings. DHHS began to evaluate whether the minor child's maternal grandmother could serve as a proper relative placement for KMB, but the matter remained pending at the time of termination because KMB's maternal grandmother lived in Ohio and the pertinent background clearances were incomplete. The agency presented testimony regarding whether a guardianship, as opposed to adoption, would be proper if the minor child was placed with his maternal grandmother. St. Aubin stated that while a potential placement with KMB's maternal grandmother was under examination, a guardianship was inappropriate. St. Aubin advanced that the minor child was thriving in his present foster care placement, and foster care worker Kathryn Wolak additionally expressed, "I do agree that having stability and not bouncing him around would be in his best interest and I believe him having that guardianship and dragging him back and forth continuously would be hard on him."

KMB's present placement is able to provide him with the permanency, security, and overall healthy environment needed for the minor child to grow and develop. Continued reunification efforts, at this point in time, are outweighed by the minor child's need for stability and finality, as the child first came into care at just seven weeks old. The trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the best interests of KMB.

-4-

For the foregoing reasons, I respectfully dissent and would affirm the trial court's order terminating respondent-mother's parental rights.

/s/ Kirsten Frank Kelly