*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. A. LEADFORD, Minor.

UNPUBLISHED
December 08, 2025
12:17 PM

No. 374891
Saginaw Circuit Court
Family Division
LC No. 22-050735-NA

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the child because the conditions that led to the adjudication continued to exist and there was a reasonable likelihood of harm to the child if returned to respondent's care. We affirm.

## I. BACKGROUND

At the time these proceedings were initiated against respondent-father, the child was already in foster care because the child had been removed from her mother's[1] care, and respondent had absconded from parole and refused to sign an affidavit of parentage. Respondent was extradited to an Arkansas prison after he relinquished himself for his outstanding warrants, and remained in that Arkansas prison throughout the pendency of this case. After respondent entered a plea to the allegations of the petition, the trial court took jurisdiction on January 3, 2024, because respondent had failed to provide for the child's care and supervision, failed to present a viable care plan for the child, failed to ensure the child's safety and wellbeing, had anger management issues, and lacked parenting skills.

Petitioner regularly sent respondent educational materials on parenting, anger management, and substance abuse, which respondent was required to complete and return to petitioner. Respondent returned some completed educational materials to petitioner in February 2024, but he did not return any educational materials after that date. Respondent asked petitioner

---

[1] Mother's parental rights were terminated and she does not join in this appeal.

-1-

to investigate two possible relative placements for the child while he remained imprisoned, but one relative declined and the other was found to be unsuitable.

On September 17, 2024, a supplemental petition for termination of parental rights was filed against respondent and the trial court held a termination hearing on January 29, 2025. At the time of the termination hearing, respondent had been granted parole and was attempting to get his parole relocated to Michigan, but he was still incarcerated with no definite release date. The trial court terminated respondent's parental rights on February 11, 2025. This appeal followed.

II. ANALYSIS

A. REASONABLE EFFORTS

Respondent first argues that his parental rights should not have been terminated because petitioner did not make reasonable efforts toward reunification.

To preserve a challenge that petitioner failed to make reasonable efforts toward reunification, a respondent must raise the issue when services are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Respondent raised issues about his lack of virtual parenting time but not about the requirement that he complete the educational materials and return them. Thus, this issue is unpreserved.

We review unpreserved challenges to the trial court's finding that reasonable efforts were made for plain error affecting substantial rights. See *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

Petitioner "has an affirmative duty to make reasonable efforts to reunite a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). And petitioner "is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Making reasonable efforts toward reunification requires creation of a service plan, which outlines the steps that the agency and the parent "will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich at 85-86. However, respondent has a commensurate responsibility to participate in the offered services. *In re Frey*, 297 Mich App at 248.

The reunification services offered to respondent were minimal because the Arkansas prison system was uncooperative with petitioner's efforts to allow virtual parenting time and it did not offer any parenting classes or other services. Therefore, petitioner's efforts toward reunification were limited to mailing defendant educational materials about parenting, anger management, and substance abuse. Petitioner also investigated two possible relative placements for the child while respondent was imprisoned, but the relative placements were not suitable due to factors outside of petitioner's control.

-2-

Respondent argues that petitioner's reasonable efforts toward reunification should have included waiting for respondent's release and return to Michigan so that respondent could more fully engage with reunification services. However, it was not reasonable to continue waiting under the circumstances given that the child had been in foster care for more than half of her life (839 days). Further, respondent did not fully participate in the reunification services that he was offered because, even after being told that he needed to complete and return the educational materials, he failed to do so. "In addition to DHHS's duty to offer services to the respondent-parent, the respondent-parent has a duty to participate in and benefit from the services." *In re MJC*, 349 Mich App 42, 50; ___ NW3d ___ (2023). Thus, the trial court did not err in finding that petitioner had made reasonable efforts toward reunification even though respondent did not participate in those services.

## B. STATUTORY GROUNDS FOR TERMINATION

Respondent next argues that the facts do not support the trial court's finding of statutory grounds for termination.

We "review[] for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). When applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.*

The trial court found two statutory grounds to terminate respondent's parental rights. The first ground was under MCL 712A.19b(3)(c)(*i*), which states that parental rights may be terminated if the court finds clear and convincing evidence that "[t]he conditions that led to the adjudication continue[d] to exist and there [was] no reasonable likelihood that the conditions [would] be rectified within a reasonable time considering the child's age." *In re White*, 303 Mich App at 710, quoting MCL 712A.19b(3)(c)(*i*). "This statutory ground exists when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services . . . ." *Id.* at 710 (quotation marks and citation omitted).

Respondent argues that he would have overcome the barriers to reunification within a reasonable time because respondent was likely to be released from prison in less than 45 days and could have demonstrated progress if given another 30 to 60 days to obtain in-person services. However, respondent's lack of parenting skills and anger management issues remained unaddressed due to his nonparticipation in reunification services. Respondent's failure to provide care, supervision, or a viable care plan for the child was also unaddressed. Respondent was still incarcerated without a set release date, had no stable housing upon his release, and had offered no viable alternative placement for the child. The child had already been in foster care for 839 days and would have had to wait an additional indeterminate amount of time for respondent to address the issues that led to her removal. Thus, the trial court did not clearly err in finding clear and convincing evidence supported this statutory ground for termination.

A trial court need only find that one statutory ground has been established to support termination of parental rights under MCL 712A.19b(3). *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). Therefore, because termination of respondent's parental rights was appropriate based upon MCL 712A.19b(3)(c)(*i*), we need not address the additional bases for termination found by the trial court.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado